**IN THE COURT OF APPEALS OF IOWA**

No. 21-0245
Filed May 26, 2021

**IN THE INTEREST OF N.C. and C.C.,**
**Minor Children,**

**A.C., Mother,**
     Appellant.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Adam D. Sauer, District Associate Judge.

A mother appeals termination of her parental rights to two children. **AFFIRMED.**

Cameron M. Sprecher of Sprecher Law Office, PLC, Mason City, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Michael J. Moeller of Sorensen & Moeller Law Office, Clear Lake, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., Greer, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**BLANE, Senior Judge.**

A mother appeals the termination of her parental rights to two children, ages eight and twelve. The mother contends the court should have forgone termination due to the strength of the parent-child bond and should have given her an additional six months to work toward reunification. We affirm.

Initiating the case and lasting throughout, the mother has faced persistent substance-abuse problems, mental-health problems, domestic violence and drug use with inappropriate paramours, unemployment, and housing instability. Despite multiple attempts, the mother was not able to maintain a significant period of sobriety. Early on, she completed outpatient treatment at Prairie Ridge and the summer of 2020 a twenty-eight-day inpatient program. But since then, she has relapsed and not engaged consistently with any treatment. She has also refused multiple requests for drug tests by the department of human services (DHS) and has tested positive several times. She admitted using illegal substances, primarily methamphetamine, through the case to cope with her mental-health condition and lack of support. She testified that the last time she used was just days before the termination hearing. The day before the termination hearing, she obtained a new substance-abuse evaluation and was scheduled to once again begin treatment.

The mother also engaged sporadically with mental-health services but did not attend consistently. She had previously been prescribed medications for her mental-health conditions but indicated she decided on her own to stop taking them. She also acknowledged that she should probably get back on some of her medications because her depression frequently "got the better" of her.

Before the termination hearing, the mother had obtained an efficiency apartment through Friends of the Family but was not employed. She had most recently been employed for about a month but was fired. But before that, she had gone a year without employment. She required housing and food assistance.

The DHS social worker's testimony pointed out another concern: the mother continues to maintain contact with paramours who expose her to domestic violence and drug use. There was an incident where a former paramour, who subjected her to domestic violence, came to her home and started banging on a door during her visitation, after which visits were moved to Families First offices for safety concerns. Both children acknowledged seeing this violence with the first paramour. The mother agreed she had ended her previous relationship that involved domestic violence but admitted to being in a new relationship that she described as abusive. The mother has told the worker that her current paramour is very similar to the former in that he is controlling and attempts to isolate her. She admitted she had once reported that the new paramour kidnapped her and tampered with her car. But various observations by the DHS social worker and Family Case Coordinators (FCC) indicated she was still seeing both men at various times through the case.

One FCC[1] testified the mother's engagement with services and DHS was inconsistent. The mother did not effectively acknowledge the issues with her parenting. She was unable to utilize many of the offered services because she did not follow through with initiation steps or complete paperwork the FCC helped her

---

[1] The first FCC is also the former family safety, risk, and permanency service provider.

start. During the case, the FCC saw little progress. At the hearing, the FCC testified the remaining barriers to reunification were unstable housing, involvement with inappropriate paramours, mental-health problems, and continued drug use.

Another FCC testified the mother understands what barriers she needs to overcome to be reunited with her children. But she still has not been consistently working to resolve them. She testified the mother has not followed through with mental-health and substance-abuse treatment programs. The FCC also testified recent visits have gone poorly because the mother gets frustrated with the children bickering. In response, she has left the room. And the FCC has had to vigorously encourage both the mother and the children to actively engage with each other during visitations. At the last visitation before the termination hearing, the mother made a hurtful statement to the children, and the FCC ended the visit early. The older child, N.C., expressed displeasure in visiting her mother and voluntarily stopped going despite encouragement from the FCC.

The DHS worker agreed that the younger child, C.C., is closer to the mother than N.C. When asked whether the mother could resolve her problems within six months, the worker said no because it would take longer based on the mother's history of inconsistency in treatment services, her continued substance abuse, and the need to demonstrate sobriety for a period of time.

The children have been in the custody of their father.[2] The juvenile court found he meets all their basic needs. But the juvenile court terminated the mother's rights under Iowa Code section 232.116(1), paragraphs (e) and (f) (2020). The

---

[2] Mother and father have been divorced for approximately five years.

mother appeals. "We review child-welfare proceedings de novo." *In re A.H.*, 950 N.W.2d 27, 33 (Iowa Ct. App. 2020). "The juvenile court's fact findings do not bind us, but we give them weight, particularly with regard to credibility." *Id.* Our primary concern is the best interests of the child[]." *Id.*

The mother first contends the district court erred by failing to apply the exception found under Iowa Code section 232.116(3)(c) to determine the termination was not necessary. That section permits the juvenile court to deny a petition to terminate if the parent presents "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). Application of this factor is permissive, not mandatory. *See In re A.R.*, 932 N.W.2d 588, 591 (Iowa Ct. App. 2019).

But we find nothing approaching clear and convincing evidence that termination of her rights would be detrimental to her children. Most of the evidence presented at trial was that the parent-child relationship was deteriorating. The FCC testified the mother's relationship with her children was distant. She described the children as being "uncomfortable" in their mother's presence. N.C. "requested that a worker be present when she saw her mom." And the mother herself admitted N.C. does not want to see her or talk to her. When asked what her relationship with the children is like right now, she responded, "I'd say distant. It's hard to get them to talk to me . . . ." She also acknowledged being "checked out" or "less engaged" with the children during visitations. N.C. appeared upset after being told a permanency hearing was continued because it meant she would have to keep going to visitations and chose to voluntarily end visitations with her mother. The

FCC worker testified that over time, "there's [been] a decline with the bond and relationship between [the mother] and her kids." The mother has not shown the children will suffer any ill effect from termination, and it appears N.C. might benefit from discontinuing contact with her mother on a permanent basis. Therefore, we find the mother did not show we should apply this subsection to halt termination.

The mother next contends the juvenile court should have given her an additional six months to work toward reunifying with the children.[3] To grant an extension of six months, under Iowa Code section 232.104(2)(b), the court must determine the need for removal will no longer exist at the end of that time. *In re A.A.G.*, 708 N.W.2d 85, 89 (Iowa Ct. App. 2005). We reach the same conclusion as the juvenile court that additional time is not warranted in this case. The mother has had well over a year to demonstrate her commitment to resolving her major problem—substance addiction. She argues she was engaged in substance-abuse treatment but since her relapse all she has really accomplished was attend a substance-abuse evaluation. At the hearing, she had not yet attended a treatment appointment. And prior successful program completions did not result in the mother demonstrating any extended period of sobriety. She admitted to using drugs throughout the case, including just days before the termination hearing. The mother also admitted to the FCC that she has "a very long recovery ahead of herself before she would be able to properly care for" her children. Nor had the mother been able to demonstrate a commitment to resolving her mental-health issues—she needed to resume medication but had not done so. She attended

---

[3] We note the court-appointed special advocate and the guardian ad litem agree with termination of the mother's rights.

mental-health treatment only sporadically. She also continued to engage in relationships with paramours that she herself admitted were abusing her. The best insight to a parent's future performance is past performance. *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). The mother has not shown there is reason to believe the need for removal will no longer exist in six months. The juvenile court correctly declined to give her the additional time.

We affirm termination of her parental rights.

**AFFIRMED.**