# IN THE COURT OF APPEALS OF IOWA

No. 21-0824
Filed September 1, 2021

**IN THE INTEREST OF Z.M. and A.M.,**
**Minor Children,**

**P.R., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Floyd County, Karen Kaufman Salic, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Elizabeth A. Batey of Vickers Law Office, Greene, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Cynthia Schuknecht of Noah, Smith & Schuknecht, Charles City, attorney and guardian ad litem for minor children.

Considered by Mullins, P.J., and May and Ahlers, JJ.

**MAY, Judge.**

A mother appeals the termination of her parental rights to her two children Z.M. and A.M.[1]  On appeal, the mother challenges the statutory grounds authorizing termination, whether termination is in the children's best interests, whether she should be granted additional time to work toward reunification, and whether her right to due process was violated.  We affirm.

We review termination proceedings de novo.  *In re Z.P.*, 948 N.W.2d 518, 522 (Iowa 2020).  "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination.  Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence."  *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (citation omitted).

We generally use a three-step analysis to review the termination of a parent's rights.  *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).  We consider: (1) whether grounds for termination have been established, (2) whether termination is in the children's best interests, and (3) whether we should exercise any of the permissive exceptions to termination.  *Id.* at 472–73.  "However, if a parent does not challenge a step in our analysis, we need not address it."  *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020).  Then we address any additional claims raised by the parents.  *In re K.M.*, No. 19-1637, 2020 WL 110408, at *1 (Iowa Ct. App. Jan. 9, 2020).

---

[1] Z.M.'s father's rights were terminated, but he does not appeal.  A.M.'s father's rights were not terminated.

The mother challenges the statutory grounds authorizing termination. The juvenile court found the statutory grounds under Iowa Code section 232.116(1)(d) and (f) (2021) satisfied. When, as here, the juvenile court terminates under multiple statutory grounds, we may affirm on any ground satisfied. *In re J.D.*, No. 21-0391, 2021 WL 3379037, at *1 (Iowa Ct. App. Aug. 4, 2021). We choose to address paragraph (f), which authorizes termination when:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve months of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f). The mother limits her challenge to the fourth element, whether the children could be returned to her home. This element is satisfied when the State establishes the children cannot be safely returned to the parent at the time of the termination hearing. *In re T.W.*, No. 20-0145, 2020 WL 1881115, at *2–3 (Iowa Ct. App. Apr. 15, 2020).

We conclude the children could not be safely returned to the mother's home. The Iowa Department of Human Services became involved with this family following reports that the mother's husband, A.M.'s stepfather, sexually abused A.M. The mother initially remained in a relationship with her husband. She only cut off contact with him once he was arrested and the court issued a no-contact order between them. Several times she reported or suggested to care providers that she was pursuing or in the process of divorcing her husband. However, it was

revealed at the termination hearing that the mother had yet to file for dissolution. This discrepancy raises a bright red flag. Like the juvenile court, we find it concerning that the mother has failed to cut all ties with "the man who sexually abused" A.M.

Moreover, we would expect the mother to be sensitive to A.M.'s unique needs as she processes the abuse she suffered at the hands of her mother's husband. Accordingly, we would expect the mother to limit conduct or conversations of a sexual nature around the children. But the mother has not taken those steps. At one point, the mother progressed to overnight visits with the children. On the first overnight visit, the mother posted "inappropriate sexual snap chats on social media" and the children were able to view them. She gave Z.M. a tablet containing nude photos of herself. She talks with A.M. about the men in her life, which A.M. does not want to discuss. A.M. also expressed she does not want to return to the mother's home because the "mother will have men over all the time again."

We also have concerns about the mother's general parental judgment. She permitted A.M., then twelve years old, to dress in her clothes and wear her makeup in a manner that prompted the children's placement to raise concerns about A.M. dressing "too mature for her age." And she gifted A.M. vape pens and CBD oil for her thirteenth birthday.

These incidents make us believe the mother does not appreciate the unique care these children require or understand how to care for them in an age appropriate manner. *See In re Z.P.*, 948 N.W.2d 518, 524–25 (Iowa 2020) (finding

a child could not be returned to the parent's care when the parent did not engage the child in age-appropriate interactions).

We also note the mother expressed to a care worker that she has a "codependency on men and that she is working on this[,] however [she] likes to have that emotional support." From this, we infer the mother would benefit from comprehensive mental-health services. Yet the mother did not fully comply with a psychological evaluation. The evaluator stated,

> [The mother]'s failure to provide the answers to [a portion of the evaluation] and her defensiveness in her responses during the evaluation interview leave me with very little information that will be useful in decision making about treatment for [the mother] and her family. Her rather excessive defensiveness, contradictory and/or incomplete information, and unwillingness to provide test responses prevent me from being able to provide any diagnoses or recommendations regarding this woman.

So we are left to wonder about the scope and severity of the mother's mental-health needs. Given our limited insight into the mother's mental-health needs, her self-expressed codependency on men, her failure to appreciate what conduct and conversations are appropriate around her children, and her failure to cut all ties with the man who sexually abused A.M., we fear the mother will place these children in an untenable position once more. So we conclude the children cannot safely return home.

The first step in our analysis is satisfied, and we move to the next.

Our next step centers on the children's best interests. *See* Iowa Code § 232.116(2). We "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." *In re*

*P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41 (citation omitted).

We conclude termination is in the children's best interests. The mother argues termination is not in the children's best interests because termination opens the possibility the children could be separated from each other—which is a concern for both children. But the children's placement has started the adoptive licensing process, so she will be able to adopt Z.M. And she is also willing to fully integrate A.M. into her home, which the court facilitated by placing A.M. in a guardianship with the placement. So the children can remain together even after termination. And while this resolution does not definitively provide the children assurance they will always remain together, it is a better resolution than placing them with a parent who cannot adequately care for them. So this step in our process is satisfied.

Next, we consider whether to apply a section 232.116(3) exception to termination. Section 232.116(3) exceptions are permissive, not mandatory. *In re A.R.*, 932 N.W.2d 588, 591 (Iowa Ct. App. 2019). And the burden of establishing a section 232.116(3) exception rests with the parent. *See A.S.*, 906 N.W.2d at 476. The mother does not specifically argue a section 232.116(3) exception should apply to prevent termination. So we do not apply an exception.

The mother argues she should be given additional time to work toward reunification. The juvenile court *may* defer termination for a period of six months if it is able to "enumerate the specific factors, conditions, or expected behavioral

changes which comprise the basis for the determination that the need for removal of the child[ren] from the child[ren]'s home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). We agree with the juvenile court that the mother should not be given additional time. The mother points to her accomplishments over the life of the case to argue she is progressing, but she identifies no "specific factors, conditions, or expected behavioral changes" she anticipates happening in the future. *See id.* Moreover, we doubt the mother would be able to make the necessary progress given her refusal to fully comply with the psychological evaluation.

Finally, we address the mother's claim that her right to due process was violated when the juvenile court denied her motion for new trial after the social worker expressed confusion as to whether she was required to recommend termination and the attorney and guardian ad litem for the children allegedly failed to have adequate contact with the children. The mother asserts these alleged irregularities denied her fundamental fairness in the termination process. We disagree. These termination proceedings were not fundamentally unfair. *See* Iowa R. Civ. P. 1.1004(1) (permitting the court to order a new trial when a "movant's substantial rights" are "materially affected" by "[i]rregularity in the proceedings of the court, jury, master, or prevailing party; or any order of the court or master or abuse of discretion which prevented the movant from having a fair trial"). The mother was able to question the social worker on her recommendation for termination and her underlying basis for recommending termination. And the mother also drew the court's attention to the children's attorney and guardian ad litem. The mother got her day in court; her rights were not impaired. So the

juvenile court did not abuse its discretion in denying the motion for new trial. *See In re M.W.*, No. 19-0588, 2019 WL 2374510, at *1 (Iowa Ct. App. June 5, 2019) (noting we review denials of motions for new trial for an abuse of discretion).

**AFFIRMED.**