**IN THE COURT OF APPEALS OF IOWA**

No. 21-0675
Filed September 1, 2021


**IN THE INTEREST OF T.F.-G.,**
**Minor Child,**

**G.G., Father,**
    Appellant,

**R.F., Mother,**
    Appellant.
_____


Appeal from the Iowa District Court for Warren County, Mark F. Schlenker,
District Associate Judge.


A mother and a father separately appeal the termination of their parental
rights to their child.  **AFFIRMED ON BOTH APPEALS.**


Gina E.V. Burress of Carr Law Firm, P.L.C., Des Moines, for appellant
father.

Karen A. Taylor of Taylor Law Offices, P.C., Des Moines, for appellant
mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant
Attorney General, for appellee State.

Magdalena Reese of Juvenile Public Defender, Des Moines, attorney and
guardian ad litem for minor child.

Considered by May, P.J., Ahlers, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**BLANE, Senior Judge.**

The mother and father separately appeal termination of their parental rights to a five-year-old son, T.F.-G.  They contend the State did not prove the grounds for termination and it was not in T.F.-G.'s best interests to terminate their rights.

## I.  FACTS AND PRIOR PROCEEDINGS

T.F.-G. was originally removed in October 2019 due to the parents using methamphetamine and amphetamines.  During execution of a search warrant, officers found methamphetamine and kitchen scales in the parents' residence.  The mother was charged with possession of methamphetamine.  The father was charged with possession of a controlled substance—a serious misdemeanor—and felony child endangerment, as the child, T.F.-G., tested positive for both drugs at a high level.  The juvenile court noted the threshold to confirm the presence of drugs is one hundred picograms per milligram (pg/mg).  T.F.-G.'s test came back at 13,564 pg/mg.  The medical notes say that level indicates both environmental exposure and ingestion of amphetamines.

In June 2020, the court held a review hearing on the parents' request to return T.F.-G. to their custody.  The court granted the motion on June 26.[1]  But, only a month later, DHS moved to remove T.F.-G. from the parents again because they both tested positive for amphetamines and methamphetamine.  And once

---

[1] It is clear the court was reluctant to do so.  The two relative placements for T.F.-G. did not work out.  In the review order, the court said it was, at that point, "in the position of having to let the child be placed in foster care for an unknown time, or giving the parents a chance to prove that they can work with the [department of human services (DHS)] and other authorities and that they can provide a safe environment for [T.F.-G.] in which to live."  The court chose to give the parents a chance.

again T.F.-G. tested positive for both substances as well. This time, the results were a significant 5253 pg/mg.

In January 2021, the mother gave birth to T.F.-G.'s brother, L.G. An umbilical cord test on L.G. came back positive for amphetamines and opiates. He was removed from the parents at the hospital. The mother was also positive for amphetamines. The mother had very little prenatal care and smoked cigarettes throughout the pregnancy. She also reported taking various cold medications while pregnant and "may have taken Adderall once during the pregnancy."

The parents' participation in ordered services has been minimal. The mother completed substance-abuse evaluations in February and December 2020. She reported attending one treatment session but tested positive by sweat patch in January 2021. She has eleven founded child abuse reports going back to 2012. In 2014, she lost parental rights to an older child. *See In re P.D.*, No. 14-0931, 2014 WL 3939481 (Iowa Ct. App. Aug. 13, 2014). And she has two other children who are in the care of their father.[2] Those cases revolve around the mother's continual same problem—substance abuse. *Id.* at *1. Despite her well-documented history and the testing throughout this case, the mother insists she has not been using methamphetamine for the past five years. She explains the positive test results by asserting the testing facility falsified results.

The father also had substance-abuse evaluations in February and July 2020. He tested positive for drugs in July 2020. Just before the termination hearing, he reported plans to go back to substance-abuse treatment but was not

---

[2] Not the father in this termination appeal.

engaged in any treatment at the time. He submitted four negative tests he arranged for himself, but they were not random tests. He further testified if DHS asked him to do more drug tests in the future, he would not comply with those requests.

The court required the parents to obtain a mental-health assessment. The father never did. Despite obtaining an assessment that recommended treatment, the mother did not timely engage or complete court-ordered treatment. At the termination hearing, the mother testified she started "last week." Throughout the case, both parents either refused to sign releases or rescinded them and inhibited DHS from collecting information from various service providers.

The State filed a petition to terminate parental rights in December 2020 when T.F.-G. had been out of parental care for more than twelve of the past eighteen months. At the termination hearing, the court took judicial notice of the underlying child-in-need-of-assistance file, L.G.'s open file, and the father's criminal file from his arrest for possession of methamphetamine and child endangerment. The court held a termination hearing in February and filed its termination order in May 2021. The court found the statutory grounds were satisfied to terminate parental rights under Iowa Code section 232.116(1)(f) (2020) as to both parents and (g) as to mother. The parents appeal separately.

## II. SCOPE AND STANDARD OF REVIEW

"We review child-welfare proceedings de novo." *In re A.H.*, 950 N.W.2d 27, 33 (Iowa Ct. App. 2020). "The juvenile court's fact findings do not bind us, but we give them weight, particularly with regard to credibility." *Id.* Our primary concern is the best interests of the child. *Id.*

## III.  ANALYSIS

### A.  Statutory grounds for termination

The parents first contend the State did not prove the statutory grounds for termination.  The State must prove the allegations in its petition by clear and convincing evidence.  *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016).  When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the order on any ground we find supported by the record.  *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).  We focus on the common ground as to both parents, paragraph (f).  Termination under paragraph (f) requires clear and convincing evidence:

> 1. The child is four years of age or older.
> 2. The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> 3. The child has been removed from the physical custody of the child's parent for at least twelve of the last eighteen months or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> 4. There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f); *see In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (defining "at the present time" to mean at the time of the termination hearing).

Although both parents concede the first three factors, they each argue T.F.-G. could have been returned to their custody because they had a stable and appropriate home, no noted parenting deficiencies, and were engaged in services. *See* Iowa Code § 232.116(1)(f)(4).  The mother contends she was not using substances throughout the case and the father contends he provided negative drug screens.  He further contends drug use alone cannot be grounds for

termination. He points out service providers have not located drugs in his home. But the negative drug tests the parents provided were not random. Both parents assert the numerous positive tests throughout the case were either faulty or falsified. The juvenile court did not find either parent's claims they are not using illegal drugs credible and, upon our review of the record, neither do we. *See In re J.S.*, 846 N.W.2d 36, 42 (Iowa 2014); *In re J.P.*, No. 19-1633, 2020 WL 110425, at *2 (Iowa Ct. App. Jan. 9, 2020) ("A parent's methamphetamine use, in itself, creates a dangerous environment for children.").

In addition, the parents' drug use is not the sole basis for termination. Testing shows T.F.-G. has been exposed to drugs at very high levels suggesting ingestion of methamphetamine. The father's protestations that no one has found drugs in his home since the October 2019 incident are unpersuasive. The mother also denied drug use during her pregnancy with L.G., but that child tested positive for methamphetamine and amphetamines at birth. Both parents have a long-standing substance-abuse history that has not abated during this case. Neither parent has completed substance-abuse treatment or mental-health therapy as ordered. Although the court transferred custody of T.F.-G. back to the parents, they only had him for less than a month before testing positive and exposing him to drugs yet again. Since then, they have been uncooperative with testing requests and failed to avail themselves of other services offered. Their home would be a dangerous environment for T.F.-G. We find clear and convincing evidence he could not be returned to their care at the present time.

**B. Best interest**

Both parents contend that termination is not in T.F.-G.'s best interest. The mother mentions that the court is to consider best interest of the child and cites to Iowa Code section 232.116(2), but she does not delve into why T.F.-G.'s best interest would be served by not terminating her parental rights and proceeds to argue permissive factors under Iowa Code section 232.116(3). The father more directly argues best interest. He points to T.F.-G's placement with him during the month of July 2020 and that he adequately provided for the child's care. The father also points out that T.F.-G.'s sibling is also court-involved and if termination is allowed, T.F.-G. will have no further connection with any parental family. Finally, he argues that T.F.-G. at the time of the termination hearing was in a relative placement and he should have been granted an additional six months to work toward reunification.

The paramount concern in a termination proceeding is the best interests of the child. *In re D.S.*, 806 N.W.2d 458, 465 (Iowa Ct. App. 2011). The child's safety and the need for a permanent home are the "defining elements in a child's best interest." *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (citing *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially)). We conclude termination is in T.F.-G.'s best interest. The parents have failed to comply with the substance-abuse and mental-health treatment. When T.F.-G. was placed back with the parents in July 2020, he was again exposed to and tested positive for methamphetamine and amphetamines. The father's protestation that termination will deprive T.F.-G. from further connection with parental family does not outweigh the necessity of the child being safe and not exposed to dangerous illicit drugs.

This is especially a concern when the father testified that he would not comply with any DHS requests for future drug tests. Further, our review of the record discloses that at the time of the termination hearing, T.F.-G. was no longer in the earlier placement with a relative, but had been moved to another placement with a pre-adoptive family.[3]

### C. Permissive factors

Next, both parents ask the court to apply the statutory factors under section 232.116(3) to forego termination. Once the State has proven the statutory grounds for termination, the burden is on the parents to establish an exception to termination under the permissive factors by clear and convincing evidence. *In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018). The parents cite paragraph (c) for when "termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). But application of the statutory factors is permissive, not mandatory. *See In re A.R.*, 932 N.W.2d 588, 591 (Iowa Ct. App. 2019). We do not find the record supports exercising this statutory provision to prevent termination.

### 1. Parent-child relationship

Both parents point out the bond that exists between them and T.F.-G. and argue terminating their rights would be detrimental to him. The record shows T.F.-G. shares a bond with his parents. The social worker testified T.F.-G. "respond[s] well to his parents," "appear[s] excited when walking into the room, giving hugs,"

---

[3] DHS also made contact with various family members to see if a relative placement or adoption could be obtained, but at the termination hearing, evidence showed that no relative was available or willing.

"talks with them," and "seems . . . comfortable sitting on their lap playing." The worker even testified the mother and father have parenting skills to care for T.F.-G. She stated, "They're loving. There's a bond between [T.F.-G.] and his parents." The FCS agreed there is a bond.

But the parents bear the burden to show termination would be detrimental to T.F.-G., and they have not carried that burden. No credible testimony to that effect was given and all the relevant testimony was that T.F.-G. is doing better out of his parents' home.

### 2. Guardianship

The mother and father also vaguely claim the district court should have applied section 232.116(3)(a) to forego termination because T.F.-G. is placed with a relative. Iowa Code § 232.116(3)(a) ("The court need not terminate the relationship between the parent and child if the court finds . . . [a] relative has *legal* custody of the child." (emphasis added)). But no relative has legal custody of T.F.-G., so this factor does not apply.

**AFFIRMED ON BOTH APPEALS.**