# IN THE COURT OF APPEALS OF IOWA

No. 21-0989
Filed October 20, 2021

**IN THE INTEREST OF C.L., B.B., and H.B.,**
**Minor Children,**

**J.B., Father,**
        Appellant,

**B.B., Minor Child,**
        Appellant.
_____

Appeal from the Iowa District Court for Polk County, Susan Cox, District Associate Judge.


A father and child appeal the termination of his parental rights. **AFFIRMED.**

Michael A. Horn of Horn Law Offices, Des Moines, for appellant father.

Jami J. Hagemeier of Drake Legal Clinic, Des Moines, for appellant minor child.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Michael Bandstra, Des Moines, attorney and guardian ad litem for minor child C.L.

Lynn Vogan of Youth Law Center, Des Moines, attorney and guardian ad litem for minor children.


Considered by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**BOWER, Chief Judge.**

A father and one child appeal the termination of the father's parental rights. We conclude the grounds for termination have been established, a six-month extension is not warranted, and termination is in the best interests of the children despite the parent-child bonds and one child's objection. We affirm.

**I. Background Facts & Proceedings.**

J.B. is the father of C.L., B.B., and H.B., born in 2004, 2006, and 2008.[1] The family has a long history of involvement with the department of human services (DHS).[2] In 2015, all three children were placed in the care of the two younger children's maternal aunt, who was granted guardianship. The father had limited contact with the children during the guardianship. All of the children have mental-health needs based on past traumas and long-term family instability.

In October 2018, the children were removed from their guardian's care due to her failure to meet their mental-health needs and adequately supervise the children. DHS assumed custody of the children and placed the children in separate foster family care and shelter care locations. In December, the children were adjudicated children in need of assistance (CINA).

Initially, the father participated in therapy and the children's therapy, had a stable home with his girlfriend and stable employment, and provided a negative drug test. In May 2019, B.B. was placed in the father's custody. C.L. returned to the guardian's home and H.B. remained in family foster care. H.B. and C.L.

---

[1] C.L.'s mother's parental rights were terminated in 2010. The mother of B.B. and H.B. consented to termination of her parental rights in this action.
[2] The parents have a history of drug use, failure to supervise the children, unsafe living conditions, and allegations of physical abuse.

transitioned to the father's custody in September and October. Then, in March 2020, the children were removed from the father's custody and placed back in foster and shelter care. The children have not returned to the father's care.

The March 2020 removal from the father's custody occurred after he assaulted his then-girlfriend A.M.[3] He also assaulted and yelled at the younger children during the altercation. A founded child abuse assessment was filed against him for denial of critical care. A no-contact order was issued to keep the father away from A.M., and he eventually pled guilty to domestic-abuse assault.

In November 2020, B.B. was placed with A.M. In early December, the father broke into the house and assaulted A.M. B.B. was again removed and returned to foster and shelter care.

The father had a substance-abuse problem before and during the guardianship but had completed treatment and reported he stopped active use in 2016. Multiple allegations of substance use arose throughout these proceedings, including during the two assaults in 2020 on A.M. At two February 2021 visits, the father reportedly appeared to be under the influence of drugs. In March, a founded child-abuse report stated the father had been caretaker for his new girlfriend's children while under the influence of methamphetamine, which was supported by a positive drug test. The father attributed some of the reports of being under the influence to energy drinks. At the termination hearing, the father stated he only

---

[3] The father has a history of domestic violence and failure to adequately care for the children. The father had previously completed domestic-abuse programming classes following a conviction for domestic abuse assault against the younger children's mother.

used methamphetamine "a couple times" in March 2021 but otherwise had been drug-free for years.[4]

The father participated in mental-health services and was discharged in early 2021. After the March 2021 DHS report and drug test, he resumed therapy. The father lives with his mother and recently became unemployed. He has a new girlfriend and they are looking to relocate with her family.

At the termination hearing in April 2021, B.B. asked that her father's rights not be terminated. C.L. and H.B. did not take a position at the time of the hearing. The juvenile court terminated the father's parental rights under Iowa Code section 232.116(1)(f) (2021). He appeals the termination of his rights to all three children, and B.B. appeals the parental-rights termination relating to her.

**II. Scope and Standard of Review.**

Review of all termination proceedings is de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Under de novo review, "[w]e review both the facts and the law and adjudicate rights anew on the issues properly presented." *In re A.T.*, 799 N.W.2d 148, 150–51 (Iowa Ct. App. 2011). "We give weight to the juvenile court's findings, but are not bound by them. Our paramount concern is the child's best interests." *Id.* at 151 (citation omitted).

**III. Analysis.**

On appeal, the father asserts the juvenile court should have granted him a six-month extension to reunite with the children, the State failed to prove the

---

[4] The father also had to go to the hospital in March after drinking "excessive amounts" of energy shots and reported to service providers he thought it caused his positive drug screen.

elements of the ground for termination, termination is not in the children's best interests, and the court failed to consider the permissive factors under section 232.116(3) to avoid termination. The child, B.B., asserts the same claims in a separate petition appealing the termination.[5]

*Ground for termination.* The court terminated the father's parental rights under Iowa Code section 232.116(1)(f). The father and B.B. do not contest the State has established the first three elements—the children are each four years of age or older, have been adjudicated as CINA, and have been out of the father's custody for at least twelve of the last eighteen months. Iowa Code § 232.116(1)(f)(1)–(3). The father and B.B. each contest the final element: "There is clear and convincing evidence that at the present time the child[ren] cannot be returned to the custody of the child[ren]'s parents." *Id.* § 232.116(1)(f)(4).

The father asserts he has complied with DHS services, including therapy; he has resolved his criminal charges; and he has taken accountability for his recent domestic violence and drug use. B.B. also claims the father took accountability for his poor choices, showed he could be a good parent when the children were placed with him, and was compliant with services.

The father has been living with his mother—who was not approved as a placement for the children. His girlfriend's family also lived at the house until the March 2021 child-abuse finding. The father now plans to move to a different city with his girlfriend and her children. He does not have a job or the means to financially support the children. In more than a year since the domestic-violence

---

[5] The child C.L. filed a response in favor of termination of the father's parental rights.

incident causing the children's 2020 removal, the father has not begun domestic-abuse counselling, has repeatedly violated a no-contact order, and has put B.B. in the middle of his relationship with A.M. Finally, he admitted using methamphetamine the month before the termination hearing, stating "I know it was wrong that I did that, but I was also upset that I kept saying I wasn't, and you guys kept insisting I was."[6]

The record shows the children could not be returned to the father's custody at the time of the hearing, and the grounds for termination of the father's parental rights were established under Iowa Code section 232.116(1)(f).

*Six-month extension.* The father argues that the progress he has made since October 2018, including the months the children were in his care and his participation in services shows he should be granted an additional six months to reunite with the children. The court may delay termination if it is able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six month period." *Id.* § 232.104(2)(b); *accord id.* § 232.117(5).

While the father did initially make progress, he was not able to maintain it. Instead, he reverted to behaviors that led to the children's guardianship in 2015. In the six months preceding the termination hearing, the father violated a criminal no-contact order multiple times, placed B.B. in the middle of his toxic relationship

---

[6] To his credit, the father restarted therapy after his relapse and "felt like crap for doing it."

with A.M., tested positive for methamphetamine, and lost his job. The only progress he maintained was the bond he developed with the children.

The legislature "has established a limited time frame for parents to demonstrate their ability to be parents." *In re J.E.*, 723 N.W.2d 793, 800 (Iowa 2006). "The legislature adopted the standard in the belief that this period must be reasonably limited because, 'beyond the parameters of chapter 232, patience with parents can soon translate into intolerable hardship for their children.'" *Id.* (citation omitted). The time frame here is twelve months. These children have waited their entire lives—including the last two and a half years of the present action after removal from their guardian—for the father to establish a safe and stable life as a parent. Reviewing the record as a whole, a six-month extension is not warranted.

*Best interests of the children.* In our best-interests analysis, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." *P.L.*, 778 N.W.2d at 40 (quoting Iowa Code § 232.116(2)).

The father simply asserts termination is not in the children's best interests. B.B. argues the lack of a permanency plan, her relationship with the father, and her preference to return to his custody means termination is not in her best interests. Reviewing the record, we disagree. The father does not consistently react appropriately or establish boundaries with B.B.—he does not redirect her from inappropriate topics or discourage disruptive behaviors and inappropriate relationships. It was the father's actions that prompted B.B.'s removal from her desired placement and put her in the middle of his deteriorating relationship with

A.M. B.B. needs structure and stability to thrive and a chance to be a child—the father has not demonstrated an ability to provide either.

The children have not had easy lives, each experiencing significant loss, abuse, neglect, and uncertainty. The father's behavior during this case shows he responds physically with those around him when angry; uses illegal substances when he chooses; ignores or is unable to handle the physical, mental, and emotional needs of the children; and displays an unwillingness to change. The father has had these children's entire lives to act as a parent and put the children's needs first. He has failed to do so, time and again. *See J.E.*, 723 N.W.2d at 800 ("Children simply cannot wait for responsible parenting." (citation omitted)). We find termination of the father's parental rights is in the children's best interests.

*Exceptions to termination.* The father argues the court should have applied the exceptions to termination under section 232.116(3)(b) and (c). He claims a close bond with all three children making termination detrimental to them and states B.B. and H.B. object to the termination of his rights. Only B.B. objected to termination at the hearing.[7] H.B. went "back and forth" on wanting to return to the father or stay with the foster family long term. On appeal, C.L. indicated a preference for termination and adoption.

There is a bond between the father and the children, but the father has not met his burden to prove termination would be detrimental to them. *See In re A.S.,* 906 N.W.2d 467, 476 (Iowa 2018). He sabotaged B.B.'s placement with A.M. by breaking in and uses B.B. to communicate with A.M. in violation of the no-contact

---

[7] B.B. expressed a preference for splitting time between the father and his former girlfriend. B.B. also indicated her current placement was a good foster family.

order. He encourages disruptive behavior toward her placements. B.B. often has been the adult in the relationship with the father. The father asked the youngest child for money at one point and said that he would be marrying his new girlfriend and live with her and her children.

B.B. has objected to the termination of the father's parental rights. We take the child's objection seriously, but it is one factor of our best-interests analysis. *See In re A.R.*, 932 N.W.2d 588, 592 (Iowa Ct. App. 2019). No matter how optimistic B.B. is about the father's ability to parent appropriately, the record does not show the father has the awareness to support her long-term mental, emotional, and physical needs or a consistent ability to steer B.B. in a good direction and provide structure.

We respect the parent-child bonds and B.B.'s expressed preferences, but we do not think these factors tilt the balance away from termination. We conclude termination of the father's parental rights was appropriate.

**AFFIRMED.**