## IN THE COURT OF APPEALS OF IOWA

No. 21-1529
Filed March 30, 2022

**IN THE INTEREST OF I.K. and A.B.,**
**Minor Children,**

**J.K., Mother,**
    Appellant.

_____

    Appeal from the Iowa District Court for Polk County, Kimberly Ayotte, District Associate Judge.

    A mother appeals the termination of her parental rights to two of her children. **AFFIRMED.**

    Michael A. Horn of Horn Law Offices, Des Moines, for appellant mother.

    Thomas J. Miller, Attorney General, and Natalie Deerr, Assistant Attorney General, for appellee State.

    Magdalena Reese of Des Moines Juvenile Public Defender, Des Moines, attorney and guardian ad litem for minor children.

    Considered by May, P.J., and Schumacher and Badding, JJ.

**MAY, Presiding Judge.**

A mother appeals the termination of her parental rights to two children, I.K. and A.B.[1]  On appeal, the mother argues the statutory grounds authorizing termination were not met, termination is not in the children's best interests, the juvenile court should have applied a permissive exception to forgo termination, and the court should have established a guardianship with the maternal grandparents as an alternative to termination.  We affirm.

We review termination proceedings de novo.  *In re Z.P.*, 948 N.W.2d 518, 522 (Iowa 2020).  "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination.  Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence."  *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (internal citation omitted).

We generally use a three-step analysis to review the termination of a parent's rights.  *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).  We consider: (1) whether grounds for termination have been established, (2) whether termination is in the children's best interests, and (3) whether we should exercise any of the permissive exceptions to termination.  *Id.* at 472–73.  Then we address any additional claims raised by the parents.  *In re K.M.*, No. 19-1637, 2020 WL 110408, at *1 (Iowa Ct. App. Jan. 9, 2020).

We first address the mother's challenge to the statutory grounds authorizing termination.  Here, the juvenile court terminated the mother's rights to the children

---

[1] The juvenile court also terminated the parental rights of any punitive fathers.

pursuant to Iowa Code section 232.116(1)(d), (e), and (f) (2021). When the juvenile court terminates under multiple statutory grounds, as occurred here, we may affirm on any ground satisfied. *In re J.D.*, No. 21-0391, 2021 WL 3379037, at *1 (Iowa Ct. App. Aug. 4, 2021). We choose to address paragraph (f). Paragraph (f) authorizes termination when:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f). The mother limits her challenge to the forth element, whether the children could be returned to her home. This element is satisfied when the State establishes the children cannot be safely returned to the parent at the time of the termination hearing. *In re T.W.*, No. 20-0145, 2020 WL 1881115, at *2–3 (Iowa Ct. App. Apr. 15, 2020).

We agree with the juvenile court that the children could not be safely returned to the mother's home. This family came to the attention of the Iowa Department of Human Services when I.K., then four years old, was discovered wandering city streets on January 10, 2019. Then, in June, police discovered both children, ages five and three, home alone. They had been left for several hours. The home was not sanitary, A.B.'s diaper was soiled, and the children had no clean clothing.

Since that time, the mother has made little progress and shown little insight into the needs of the children. And her interest in parenting the children appears to be limited. The children are placed with the maternal grandparents,[2] who have an open door policy for the mother. This means the mother can always come visit the children—and they will also provide the mother with transportation if needed. Yet the mother only visits once or twice a week to braid A.B.'s hair or to do her own laundry. She does not help prepare food for the children or engage them in any play activities. From the mother's testimony, it seems she is most interested in I.K. and A.B. returning to her care so that they can assist her in providing care to her two younger children.[3]

Also, the mother has demonstrated poor judgment that could put the children at risk. She dated a man even though she knew he assaulted a prior paramour. At the time of the termination hearing, the mother had an active arrest warrant. Before her third child was removed from her care, she spontaneously left that child with the grandparents for three days after she argued with them about not washing the dishes. When asked what she has learned that could assure the court she would not leave the children again if she became upset about something, the mother did not provide a relevant response. Instead, she said she learned to kneel and talk calmly with children. We agree this is a good way to communicate with children, but it does not abate our concerns that the mother would leave the

---

[2] All subsequent references to grandparents are to the maternal grandparents.
[3] The mother gave birth to the two younger children during the pendency of this case. Only one of the children—the mother's youngest— remained in the mother's care at the time of the termination hearing; the second youngest was then in the care of the grandparents.

children for days if she became upset. And although the mother has been encouraged to engage in therapy, the mother has declined to do so. She says she doesn't need therapy.

Taking all of this together, we conclude the children cannot be safely returned to the mother's care. So, like the juvenile court, we conclude the State established a ground for termination.

Next, we consider whether termination is in the children's best interests. In considering their best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive the child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

We conclude termination is in the children's best interests. These children have been in their grandparents' care for two years. At the termination hearing, the mother admitted that the children are more comfortable with their grandparents. The grandparents are willing to adopt the children. *See* Iowa Code § 232.116(2)(b). And termination is a necessary first step before the grandparents can adopt.

But the mother suggests termination is not in the children's best interests because there is a chance she may successfully reunify with her second youngest child while maintaining care of the youngest. So, she contends, termination would

prevent the entire family from potentially reunifying. *Cf. In re A.M.S.*, 419 N.W.2d 723, 734 (Iowa 1988) (noting siblings should be raised together when possible). But we do not believe it is in I.K.'s and A.B.'s best interests to leave their lives in limbo while we wait for other cases involving other children to play out. I.K. and A.B. need and deserve permanency as soon as possible.

Next, we consider whether to apply a section 232.116(3) exception to termination. Section 232.116(3) exceptions are permissive, not mandatory. *In re A.R.*, 932 N.W.2d 588, 591 (Iowa Ct. App. 2019). And the burden of establishing a section 232.116(3) exception rests with the parent. *See A.S.*, 906 N.W.2d at 476. The mother points us to section 232.116(3)(a), which permits the court to forgo termination when "a relative has legal custody of the child[ren]." Here, the children's grandparents had temporary legal custody of the children at the time of the termination hearing. But the mother provides no compelling reason why we should elect to apply section 232.116(3)(a) to preclude termination in this instance.[4] So we do not.

The mother also argues we should establish a guardianship with the children's grandparents serving as guardians. But the juvenile court never ruled on the mother's request to establish a guardianship as an alternative to termination. "If a party presents an issue to the court, but the court does not rule

---

[4] The mother's petition on appeal claims the juvenile court "erred in failing to consider the permissive factors under Iowa Code [section] [232].116(3)." But we note the court did consider whether it should apply a section 232.116(3) exception. Specifically, the juvenile court stated, "After considering the children's young age, their placement in the same home since removal, the grandparents['] desire to adopt, and the diminished attachment given the parents' lack of consistent contact, the court finds there are no legal exceptions in Iowa Code section 232.116(3) which would argue against termination."

on that issue, 'the party raising the issue must file a motion asking the court for a ruling in order to preserve the issue for appeal.'" *In re B.N.*, No. 14-1640, 2015 WL 582091, at *1 (Iowa Ct. App. Feb. 11, 2015) (citation omitted). And the mother did not file a motion requesting the court address her request to establish a guardianship. So we conclude the mother's guardianship request is not preserved for our consideration. For good measure, though, we note "a guardianship is not a legally preferable alternative to termination." *A.S.*, 906 N.W.2d at 477 (citation omitted). And the grandparents prefer termination and adoption over guardianship. All things considered, we do not think this family would be a good fit for a guardianship.

The juvenile court was right to terminate the mother's rights to these children. We affirm.

**AFFIRMED.**