## IN THE COURT OF APPEALS OF IOWA

No. 23-1263
Filed October 11, 2023

**IN THE INTEREST OF H.S.,**
**Minor Child,**

**R.S., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Dallas County, Erica Crisp, District
Associate Judge.

        A father appeals the termination of his parental rights to his child.
**AFFIRMED.**

        Donna M. Schauer of Schauer Law Office, Adel, for appellant father.

        Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney
General, for appellee State.

        Paul White of Juvenile Public Defender, Des Moines, attorney and guardian
ad litem for minor child.

        Considered by Bower, C.J., and Ahlers and Chicchelly, JJ.

**BOWER, Chief Judge.**

A father appeals the termination of his parental rights to his child, born in 2021.[1] He claims the State failed to prove the ground for termination cited by the juvenile court and permissive exceptions militate against termination. Upon our review, we affirm.

## I. Background Facts and Proceedings

This family came to attention of the department of health and human services in August 2021, when H.S. tested positive for methamphetamine at birth. The mother admitted "to ongoing methamphetamine use" "during her pregnancy." The child was removed from the mother's care, adjudicated in need of assistance, and placed with the mother's father and stepmother, "a prior placement of a previous child [of the mother's] who then adopted her child."

In December 2021, the mother was doing "really well" with inpatient substance-abuse treatment, and the department recommended the child be placed with the mother in the program. The court approved the change in placement. Meanwhile, paternity testing determined the father was the child's biological father. Because the father had "warrants out for his arrest," he did not attend the dispositional hearing. He also admitted being a "current meth user," and there were concerns about domestic violence between the parents.

The mother relapsed in May and June 2022 and reentered inpatient treatment. The child was again placed with the mother's family members. The father did not appear for the dispositional review hearing, and the court noted he

---

[1] The child has been in the mother's custody; her parental rights were not terminated.

"has not been willing to comply with services of [the department] with fear that he will be called into the police for his warrant and be arrested." The father had "not maintained contact with the child." Meanwhile, the mother was "engaged in treatment" and having regular visits with the child. In August, the court approved a change in placement for the child with the mother at the treatment center. The child has remained in the mother's custody since.

At the permanency hearing in September, the father was in jail serving a 120-day sentence for assault on the mother. He acknowledged he was "on the run before this," so he "wasn't really keeping contact" with the department or "doing much of anything." He stated he was trying to handle his "meth use problems" on his own, but he "wasn't having any luck." The father had participated in two supervised visits with the child. He requested a six-month extension. The court granted the request, finding it would "provide[ ] the father time to participate with services while being under supervision of [the department]."

The father was released from jail in November, and he began participating in weekly substance-abuse treatment. The father was also engaging in weekly visits with the child, which were going well. Despite "receiving threatening" communications from the father, the mother was willing to work on co-parenting with him. However, the department predicted the mother's case would close soon, and it expressed apprehension about how the mother would handle contact with the father without department oversight due to their history of domestic violence and the father's unresolved substance-abuse and mental-health concerns.

The department's worries were well-founded.  In early 2023, the father failed to appear for a requested drug screen[2] and had several alarming contacts with the mother.  In one instance, he went to her residence and "slashed all of her tires."  In another, he "hit [her] in the head," causing her to receive "three staples" following an argument in which the child was present.  A no-contact order was entered against the father.  The father thereafter "showed up" "in the middle of the night and wouldn't leave," threatening the mother "with a gun" but leaving before the police arrived.  The State filed a petition to terminate the father's parental rights.

At the review hearing in April, the father's attorney noted the father was "aware that he needs to become re-involved with [services], and he's planning to partake in all of those."  The court observed the termination hearing was set for June, and told the father:

> [Y]ou just need to understand that you've got about two months to prove to everybody that that's not what should happen on that day.
>
> You need to complete a new substance abuse evaluation and follow through with the recommended services.  You need to work with your [service] worker for parenting and for visitation, follow any and all orders that are handed down to you from the criminal court, attend court dates and that kind of thing, and refrain from any further criminal behavior.
>
> If you have a no contact order with the mother in this case, it will be a condition of this case that you not have any contact with her directly.

The termination hearing took place as scheduled.  Due to the father's continued lack of engagement in services, the department recommended termination of his parental rights.  The father acknowledged he had been in contact

---

[2] The caseworker reported, "Out of the ['six, if not more'] tests that I've asked him to do [over the life of this case], I've had zero that he's done.  So all of them would be considered positive in the court."

with the mother in violation of the no-contact order because she asked him to "babysit" the child. He also admitted he had used methamphetamine "[y]esterday," and stated he'd "like services." The father testified his criminal charges were "kind of becoming a blur" but would be resolved in a "[c]ouple days—tomorrow." The father requested the court enter a bridge order in lieu of terminating his parental rights.

The juvenile court thereafter entered an order terminating the father's parental rights under Iowa Code section 232.116(1)(g) (2023). He appeals.

## II. *Standard of Review*

Appellate review of termination-of-parental-rights proceedings is de novo. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). Our paramount concern in termination proceedings is the best interests of the child. *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019).

## III. *Grounds for Termination*

A court may terminate parental rights pursuant to section 232.116(1)(g) when it finds all of the following have occurred:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (2) The court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family . . . .
> (3) There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.
> (4) There is clear and convincing evidence that an additional period of rehabilitation would not correct the situation.

The father does not dispute H.S. has been adjudicated a child in need of assistance. Nor does he dispute his parental rights were previously terminated to

another child, born in 2010. *See In re H.B.*, No. 18-0835, 2018 WL 3913110, at *3 (Iowa Ct. App. Aug. 15, 2018) ("The fact the children shared the same [fa]ther is dispositive. The second element of section 232.116(1)(g) was satisfied.").

Regarding the remaining elements, the father was aware "there were steps that needed to be taken" toward reunification. But he chose not to avail himself to services consistently due to his outstanding warrants and "lack of wanting to meet with any of the workers because he felt [they] were going to call the police to have him turned in." Even so, the father had ample time to engage in substance-abuse, mental-health, and domestic-violence treatment. Indeed, in September 2022, the court granted him a six-month extension "to participate with services while being under [the department's] supervision." Yet at the time of the termination hearing nine months later, the caseworker testified, "he's not in any services currently. No substance treatment, no therapy or anything." The caseworker further acknowledged the father "has had continuing legal issues throughout the entirety of [the case]." Except for one visit the week before the termination hearing, the father had gone over a month without any visits or having contact with the department. The father acknowledged using methamphetamine "probably twenty days out of thirty" in the last month, his methamphetamine use was "an ongoing battle," but he stated he could control his usage "[t]o an extent." As the guardian ad litem opined, "we have a father who—who I think, by all accounts, is not taking advantage of the services that have been offered to him, and has not really put himself in a position where he could be a parent and have—have a role in [the child's] life as required under the Code."

The father insists "[a]n additional period of rehabilitation would correct the situation such that [his] parental rights would not need to be terminated." The juvenile court found, however,

> He was previously given a six-month extension with very specific goals and did not use it productively; rather, he persisted in using illegal drugs, did not address his mental health, and continued to rack up new criminal charges. Although he insists he can stop when he wants, the available data show that appears to be a mere pipe dream.

Under these facts and circumstances, we conclude the father's parental rights were properly terminated pursuant to Iowa Code section 232.116(1)(g).

## IV.     Exceptions to Termination

The father also claims his bond with the child and the child's placement with the mother militate against termination. *See* Iowa Code § 232.116(3)(a), (c) (allowing the court to avoid termination of parental rights where "[a] relative has legal custody of the child" or "termination would be detrimental to the child . . . due to the closeness of the parent-child relationship"). These exceptions "are permissive, not mandatory." *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (citation omitted). "The court may exercise its discretion in deciding whether to apply the factors in section 232.116(3) to save the parent-child relationship based on the unique circumstances of each case and the best interests of the children." *In re A.R.*, 932 N.W.2d 588, 591 (Iowa Ct. App. 2019). "[O]nce the State has proven a ground for termination, the parent resisting termination bears the burden to establish an exception to termination" under section 232.116(3). *In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018).

Several witnesses testified to the bond shared between the father and the child, and the father stated the two "have a blast together." But the guardian ad litem opined:

> I just have ongoing concerns about the safety of the child if—if [the] father's rights remain in place because he hasn't addressed [the issues impeding reunification]. And I—I understand that the—kind of the dilemma that the mother is put into, and I—with the situation where she wants the father's participation or—of a role for her child, but [it] doesn't seem that there's any way that that can be done safely.

Indeed, the caseworker testified the father had "been very toxic with trying to reach out to [the mother]." She believed "it would be very difficult ongoing" "if [the father's] parental rights were not terminated and [the mother] had full custody and there was a visitation schedule." The father stated he and the mother could communicate effectively "if it's a necessary situation," but he agreed maintaining the no-contact order was "the best way" because "[t]here's a lot of hurt and pain between us in our relationship, and—you know, sometimes it just can't handle it."[3] Under these facts and circumstances, the father has not proved either exception militates against termination.

We affirm the termination of the father's parental rights.

**AFFIRMED.**

---

[3] The mother testified similarly, stating she had not considered having the no-contact order removed "[b]ecause at any time, [the father] could fly off the handle."