**IN THE COURT OF APPEALS OF IOWA**
No. 24-1310
Filed January 9, 2025

**IN THE INTEREST OF O.L. and R.L.,**
**Minor Children,**

**L.Y., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Rachael E. Seymour,

Judge.

        A mother appeals the termination of her parental rights to two children.

**AFFIRMED.**

        Karen A. Taylor of Taylor Law Offices, P.C., Des Moines, for appellant

mother.

        Brenna Bird, Attorney General, and Natalie Hedberg, Assistant Attorney

General, for appellee State.

        Erin Romar of Youth Law Center, Des Moines, attorney and guardian ad

litem for minor children.

        Considered by Tabor, C.J., and Ahlers and Sandy, JJ.

**TABOR, Chief Judge.**

A mother, Lea, appeals the juvenile court order terminating her parental rights to O.L. (born in 2019) and R.L. (born in 2021). She contends that the State failed to prove the statutory grounds for termination; termination is not in the children's best interests; and termination, in fact, would harm them because of their close bond with her. She also asks for six more months to reunify her family and mentions the possibility of establishing a guardianship with a relative or fictive kin.

Because Lea agreed at the termination trial that the children could not be returned to her custody, and she was only asking for more time, we decline to reverse on her statutory-grounds argument. *See* Iowa Code § 232.116(1)(h) (2024). We also find that the State proved by clear and convincing evidence that termination was in the children's best interests. *See id.* § 232.116(2). And, conversely, Lea did not prove by clear and convincing evidence that terminating her parental rights would harm O.L. and R.L. because of the closeness of the parent-child relationships. *See id.* § 232.116(3)(c). Nor were the children in the legal custody of a relative. *See id.* § 232.116(3)(a).

As for more time, like the juvenile court, we credit the testimony of social worker Taylor Dursky, who believed that delaying permanency would not benefit the children because they were "struggling with the unknown." And the parents had not fully engaged in services to address their mental health or substance use. In Dursky's assessment, "the parents are in no better position today than when the

case first came before the court."  On our de novo review, but deferring to the juvenile court's credibility findings, we affirm the termination order.[1]

## I.  Facts and Prior Proceedings

By the time the juvenile court ordered that O.L. and R.L. be removed from parental care in March 2023, they had been involved with the Iowa Department of Health and Human Services for six months through safety plans.[2]  Under those plans—stretching from October 2022 through February 2023—the parents agreed that the children would be placed outside their home.[3]  But during those months, the children tested positive for illicit drugs.  When the parents provided drug screens positive for cocaine in late January 2023, the State petitioned to have O.L. and R.L. adjudicated as children in need of assistance.

The court granted the petition in April 2023.  The court also granted the mother's motion to find that the department had not made reasonable efforts to provide visitation.  The court ordered the department to increase the frequency of the children's visits with their parents.  By the May 2023 dispositional hearing, the

---

[1] "We review termination proceedings de novo, examining both the facts and law and adjudicating anew those issues properly preserved and presented." *In re A.R.*, 932 N.W.2d 588, 589 n.1 (Iowa Ct. App. 2019).  The juvenile court's factual findings do not bind us, but we give them weight, especially when deciding whether a witness is to be believed.  *Id.*

[2] A safety plan is "a short-term, time-limited agreement entered into between the department and a child's parent or guardian designed to address signs of imminent or impending danger to a child identified by the department."  Iowa Code § 232.79B.

[3] The father had been selling drugs from the family home, and both parents admitted using cocaine.  Under the safety plans, the children stayed with their paternal grandmother.  But the court modified the children's placement after the removal hearing because of the department's concerns about drug use in that relative's home.  Ultimately the court terminated the father's parental rights too; he does not participate in this appeal.

court determined that the visitation issue had been resolved. The court continued out-of-home placement, though Lea was attending substance-use treatment and mental-health therapy.

Lea's progress was highlighted by Erin Romar, the children's guardian ad litem (GAL), in her August 2023 report to the court. Romar reported that Lea was "following through on every recommendation," and the GAL had no concerns about the children's safety in their mother's care. Romar recommended reunification. But that recommendation changed in October after Lea tested positive for cocaine. The GAL advised the court of her new position:

> The undersigned is very sad to report that we can no longer support return at this time. There is no doubt that the mother loves her children very very much, and works very hard to support them as best as possible, and continues to participate in her recovery and treatment. However, her most recent patch came back positive and she is ADAM[A]NT she did not use but that she was around people who had used while at a weekend camping trip.[4]
> Because the mother continues to surround herself, or make decisions to be around those who use, it is clear she still has a lot to learn about protective decision making, safe decision making on who she spends her time with, and the possibility and likelihood of relapse when being around others who use while she is sober.

In its November 2023 review order, the court found that Lea's explanation for the positive drug test lacked credibility. The court also bemoaned Lea's continued association with the children's father: "If [she] is serious about her own sobriety, she should not be involved in a relationship with someone who is actively using." Lea's substance use was also an ongoing issue for the department. It reported three sweat patches positive for cocaine that fall. But it also reported four

---

[4] The department described the "camping trip" as "an outdoor rave" where substance use was "commonplace."

negative patches and five negative urinalysis tests. And Lea missed a screening in January 2024 because of work commitments. In its February 2024 report, the department expressed concern "that Lea has not taken any accountability for her use and continues to deny she used cocaine. Lea continues to report that she is not and has not used any cocaine and does not understand why her patches have been positive." The court embraced the department's view in its permanency order, finding that Lea had failed "to meaningfully address her own substance use issue" or "take accountability" for the positive test results. The court was also troubled by Lea's admission that she continued to drink alcohol socially, despite cautions from substance-use providers.

In March 2024, the State petitioned to terminate parental rights. The court heard evidence in May. In her direct examination, Lea agreed "that the children could not return to [her] care today." But she asked for an extension of six months so that she could be in position to resume custody. In July, the court terminated her parental rights under Iowa Code section 232.116(1), paragraphs (f) and (h). She appeals.

## II.     Analysis

Terminations follow a three-step analysis. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). First, the juvenile court must decide whether the State proved one of the grounds listed for termination in section 232.116(1). *Id.* After finding that proof by clear and convincing evidence, the court must consider if termination is in the children's best interests by applying the factors in section 232.116(2). *Id.* Then, if the State meets those two prongs, the court must see if any circumstances in section 232.116(3) compel forgoing termination. *Id.* at 41.

### A. Statutory Grounds

Lea first argues that the State failed to prove the grounds for termination under subparagraphs (f)(4) and (h)(4) of section 232.116(1). In her petition on appeal, she asserts there was not "clear and convincing evidence presented at trial to support that the children cannot be returned to her at the present time." *See In re M.H.*, 12 N.W.3d 159, 161 (Iowa Ct. App. 2024) (interpreting "at the present time" to mean at the time of the termination trial). In support, she cites "her extensive involvement with services throughout the life of the case." This argument differs from her position at trial, where she conceded that she was not ready to resume custody of O.L. and R.L. Given her concession at trial—together with the State's proof of her unresolved substance use—we affirm termination on these grounds.

### B. Best Interests

Lea next argues that more time to reunify rather than termination of her parental rights is in the children's best interests under the factors in section 232.116(2). In deciding best interests, we give primary consideration to the children's safety, to the best placement for furthering their long-term nurturing and growth, and to their physical, mental, and emotional conditions and needs. Iowa Code § 232.116(2). To allow a parent more time, the juvenile court must find that the need for removal will be gone at the end of a six-month extension. *See* Iowa Code § 232.104(2)(b). This record does not support a delay in permanency. *See In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021) (explaining that parents must not only show that the impediments to placing children with them will not exist in six months, but also that further delay is in the children's best interests).

To that point, social worker Dursky testified that termination was preferable to an extension:

> The children deserve permanency. They've been out of their parents' care for over a year now, and they are struggling with some of their emotions going back and forth not knowing where they're going to live, and the parents still have their substance-use concerns to address, the ongoing mental-health concerns, along with their relationship.

We credit her sentiments and agree with her perception of what is in O.L. and R.L.'s best interests. Thus, the court properly determined that further delay was not warranted.

### C. Permissive Exceptions to Termination

Lea also argues that we should apply a permissive exception to preclude termination. *See* Iowa Code § 232.116(3). Once the State has proved a ground for termination, it is up to the parent to show that the court should apply an exception. *In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018). Lea cites paragraph (a), which allows the court to avoid terminating parental rights if a relative has legal custody of the children, and paragraph (c), which states that the court need not terminate if there is "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3).

Invoking paragraph (a), Lea notes that the children were living with fictive kin, and the department was exploring placement with an aunt.[5] But fictive kin

---

[5] In her petition on appeal, Lea mentions that the court "could have granted a guardianship with one of these individuals." The juvenile court did not rule on any request for a guardianship, so error is not preserved. Even if we bypassed that deficiency, a guardianship is not the preferred method for permanency. *See A.S.*, 906 N.W.2d at 477 ("[A] guardianship is not a legally preferable alternative to

8

does not fall under the definition of relative in chapter 232.  *See* Iowa Code § 232.2(22), (56).  And the children were not in the legal custody of the aunt.  *See* *In re A.B.*, 956 N.W.2d 162, 170 (Iowa 2021).

As for paragraph (c), Lea failed to prove that termination would harm O.L. and R.L. based on the closeness of their relationship with her.  True, the record shows that Lea was bonded with the children.  As GAL Romar reported, "She is calm, supportive, and it is clear that her children love her very much and feel safe with her."  But "our consideration must center on whether the child[ren] will be disadvantaged by termination, and whether the disadvantage overcomes [the parent's] inability to provide for [their] developing needs."  *In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010).  Given how long they have been out of the home, the struggles the children have with the uncertainty of their future placement, and the lingering concerns about their mother's substance use, we decline to apply the permissive exception.

**AFFIRMED.**

---

termination.").  And a guardianship cannot be a permanency option unless convincing evidence shows termination would not be in the children's best interests.  *See* Iowa Code § 232.104(2)(d)(2), (4)(a).  Here, we have already concluded termination is in the children's best interests.