**IN THE COURT OF APPEALS OF IOWA**

No. 24-2038
Filed March 5, 2025

**IN THE INTEREST OF S.M.,**
**Minor Child,**

**S.C., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Wapello County, Susan Cole, Judge.

A father appeals a juvenile court order terminating parental rights.

**AFFIRMED.**

Joseph P. Goedken of Orsborn, Mitchell & Goedken, P.C., Ottumwa, for appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Samuel Erhardt, Ottumwa, attorney and guardian ad litem for minor child.

Considered by Tabor, C.J., and Schumacher and Chicchelly, JJ.

**TABOR, Chief Judge.**

The juvenile court terminated the parental rights of one-year-old S.M.'s mother and father. Only the father appeals. The father disputes the court's finding that clear and convincing evidence supported termination and contends that termination is not in the child's best interests. The father also argues that the termination would harm S.M. because of the closeness of their parent-child relationship. After our de novo review of the record, we credit the views of the professionals in the case that, despite making efforts to gain parenting skills, the father lacks the ability to care for S.M. safely.[1]

## I.     Facts and Prior Proceedings

When S.M. was born prematurely in October 2023, he weighed just over four pounds. His mother could not care for him because of her intellectual challenges.[2] So the department removed S.M. from her custody. Shortly after S.M.'s birth, the mother identified S.C. as the biological father.[3] Paternity testing confirmed that identification. In December 2023, S.M.'s guardian ad litem (GAL) reported: "There have been enough serious concerns raised about parents'

---

[1] "We review termination proceedings de novo, examining both the facts and law and adjudicating anew those issues properly preserved and presented." *In re A.R.*, 932 N.W.2d 588, 589 n.1 (Iowa Ct. App. 2019). We are not bound by the juvenile court's factual findings, but we give them weight. *Id.*

[2] The mother reported to the Department of Health and Human Services that she has fetal alcohol syndrome, schizophrenia, and bipolar disorder diagnoses. When her older child was an infant, she tried to smother him with a pillow. That child is in a guardianship with the maternal grandmother. The mother also is a registered sex offender.

[3] The father had parental rights terminated to two other children in 2021 after admitting to sexual abuse of their half-sister. We affirmed those terminations on appeal. *In re G.C.*, No. 21-1781, 2022 WL 246270 (Iowa Ct. App. Jan. 27, 2022). The father faced criminal charges but was found incompetent to stand trial because of an intellectual disability.

capabilities that I would be 'scared to death' to allow this infant to be placed with either of them at this time." In January 2024, the court adjudicated S.M. as a child in need of assistance (CINA).

Through most of the CINA case, S.C. lived with her parents.[4] S.C. received disability payments with her father as the payee. S.C. was consistent in visiting S.M. and progressed to overnight visits in March 2024. But complications arose about a month later. S.C. suffered seizures and was prescribed medication that had side effects preventing her from being alone with S.M. The father also reported that S.M.'s grandfather acted inappropriately when the infant visited their home. The grandfather was reportedly frustrated with the infant and threatened to "throw [him] off of a bridge."[5] Those developments jarred the department into reinstating fully supervised visitation in public spaces. During those visits, the social workers noted safety concerns over S.C.'s parenting. The father would "often walk into the street without really checking for traffic." The father would also set S.M. on high surfaces without supervising him and required prompting to meet the child's needs.[6]

To remedy those deficits, the father engaged in services, including 24/7 Dads and Safe Care. S.C. recalled: "I tried learning to be a better father to [S.M.], and I listened closely." But despite completing those programs, S.C. lacked the

---

[4] S.C. uses she/her pronouns.

[5] At the termination trial, S.C. downplayed the grandfather's hostility, insisting "he won't hurt people." But S.C. conceded that the grandfather had a quick temper and has also threatened to hurt her.

[6] S.M. had developmental delays but had not been diagnosed with any specific conditions. The department was working with the Area Education Agency to assess what services S.M. would need when the grandfather "kicked" the AEA representative out of the house.

capacity to be a safe caretaker in the view of the department case manager. The GAL agreed that the father could not resume custody: "[S.C.] wants to raise [S.M.] and tries very hard to do so. She also, generally, recognizes her limitations. It breaks my heart to see such a spirited, nice, and willing parent unable to provide the necessary care for their child."

The juvenile court terminated S.C.'s parental rights under Iowa Code section 232.116(1) (2024), paragraphs (e), (h), and (g). She appeals.

## II.     Analysis

The analysis for terminating parental rights follows three steps. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (discussing Iowa Code section 232.116(1)–(3)). At a minimal level, S.C. contests each step.

### A.  Statutory Ground

We first examine whether the State offered clear and convincing evidence to support a ground for termination. When the court terminates on more than one ground, we may affirm on any alternative supported by the record. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We focus on paragraph (h). That alternative requires the State to prove these elements: the child (1) is three or younger; (2) has been adjudicated a CINA; (3) has been removed from the physical custody of the parents for at least six months; and (4) cannot be returned to the custody of the parents at the present time. Iowa Code § 232.116(1)(h).

S.C. challenges the fourth element. She asserts that S.M. "could safely be returned to her, given additional time to find suitable housing away from her parents, and on her own, when she would be able to secure more regular employment or handle her disability payment on her own." But no further delay is

built into paragraph (h).  "Present time" means the date of the termination hearing. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).  The record does not feature any evidence that S.M. could safely be returned home with his father at the time of the termination hearing.  And even if time were not a factor, both the caseworker and GAL expressed ongoing concern about the father's capacity for safe parenting. *See In re C.P.*, No. 10-1629, 2010 WL 5394863, at *5 (Iowa Ct. App. Dec. 22, 2010) ("No professional was willing to offer the opinion that the parents are capable of caring for [the children] now, or even that they would be able to do so within a reasonable period of time.").[7]

### B.  Best Interests

The father next contends that it is not in S.M.'s best interests to sever their bond.  We acknowledge the parent-child bond may fit into an analysis of best interests.  But we give primary consideration to S.M.'s safety, to the best placement for fostering his "long-term nurturing and growth," and to his "physical, mental, and emotional condition and needs."  *See* Iowa Code § 232.116(2).  We also consider S.M.'s integration into his foster family.  *See id.* § 232.116(2)(b).

We are most worried about S.M.'s safety.  The record shows that the father cannot protect the child from day-to-day hazards like traffic and falls.  And as the State points out, S.C. struggles to meet her own needs, relying on her father who has made threats toward both S.C. and S.M.

---

[7] It is possible for the juvenile court to grant the parent more time to work toward reunification if there are "specific factors, conditions, or expected behavioral changes" that suggest the need for removal will be alleviated at the end of that time.  Iowa Code § 232.104(2)(b).  But we find no such indicators here.

Given these harsh realities, we find it is in S.M's best interests to move toward a more stable future.  *See In re J.H.*, 952 N.W.2d 157, 173 (Iowa 2020) (declining to deprive child of permanency while "hoping someday" that parent will be able to provide stable home (citation omitted)).  While S.M.'s current foster parents cannot adopt him, the department is exploring the possibility that the foster parents' son and daughter-in-law may be a long-term placement option.

## C.  Exception Based on Closeness of Relationship

Finally, the father mentions the exception to termination at Iowa Code section 232.116(3)(c), which allows a court to deny termination if the parent offers clear and convincing evidence that it would harm the child based on the closeness of their relationship.  But at the termination hearing, the father presented no evidence that S.M. would suffer physically, mentally, or emotionally upon termination.  *See In re L.H.*, 13 N.W.3d 627, 629 (Iowa Ct. App. 2024).  Just citing their bond is not enough to trigger application of this permissive exception.  *Id.*

Finding no cause for reversal, we affirm the termination of the father's parental rights.

**AFFIRMED.**