# IN THE COURT OF APPEALS OF IOWA

No. 18-2089
Filed March 20, 2019

**IN THE INTEREST OF A.R. and A.R.,**
**Minor Children,**

**A.A., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Appanoose County, William Owens, Associate Juvenile Judge.

A mother appeals the termination of her parental rights to two teenage daughters. **AFFIRMED.**

Julie De Vries of De Vries Law Office, PLC, Centerville, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Debra A. George of Griffing & George Law Firm, PLC, Centerville, attorney and guardian ad litem for minor children.

Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**TABOR, Judge.**

A mother, Amanda, seeks reversal of the juvenile court order terminating her parental rights because her two teenage daughters object to the termination. She believes the court should have applied Iowa Code section 232.116(3)(b) (2018) to save the parent-child relationship. We respect the daughters' heartfelt testimony opposing termination of their mother's rights. But after our independent review of the record,[1] we conclude their objections do not override their need for a stable, permanent home.

**I.      Facts and Prior Proceedings**

Amanda's older daughter, An.R., was twelve years old and her younger daughter, Au.R., was ten years old when they were adjudicated as children in need of assistance (CINA) in April 2015. The CINA adjudication followed the execution of a search warrant in Amanda's home in March 2015. Police found methamphetamine and drug paraphernalia accessible to the children. Amanda admitted to using methamphetamine for several months leading up to her arrest. Amanda was in jail from September 2015 until April 2016; she then moved to a halfway house. The Iowa Department of Human Services (DHS) caseworker expressed concerns about Amanda's mental-health stability. Amanda successfully completed substance-abuse treatment in October 2016. During these eighteen months, the DHS placed An.R. and Au.R. with suitable custodians.

---

[1] We review termination proceedings de novo, examining both the facts and law and adjudicating anew those issues properly preserved and presented. *In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). We are not bound by the juvenile court's factual findings but give them weight, especially when witness credibility is involved. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016).

In January 2017, the juvenile court returned legal custody of the girls to Amanda, instructing her to follow the DHS case plan. The plan explained "safe case closure" would require Amanda "to provide a safe home free from substance abuse and she must maintain stable mental health." But Amanda did not meet those requirements. In March 2017, Amanda tested positive for methamphetamine. She acknowledged frequent use of methamphetamine between December 2016 and February 2017. Amanda also reported hearing voices and experiencing bipolar symptoms. In May 2017, the juvenile court followed the DHS recommendation to leave the girls in Amanda's care under a safety plan. The hopes for continued reunification were short-lived. Amanda relapsed on methamphetamine again in July 2017, leading to another removal. An.R. and Au.R have been in the same foster home since September 2017.

For the next year, Amanda continued to struggle with her mental-health and substance-abuse issues. She missed therapy appointments and did not adhere to a medication regimen. In March 2018, she was hospitalized for psychiatric care. When Amanda resumed visitation with the girls in April 2018, her thinking was still not clear. For instance, Amanda told An.R. she had been gang raped and one of the men was the rapper Eminem. Amanda also told An.R. "Jesus is Satan" and "Satan is Jesus." Later in April, Amanda sent a text message to the DHS caseworker telling her to update the relative search because Amanda's father is Eminem. The girls refused several visits in May because of their mother's bizarre behavior. Amanda continued to use methamphetamine and marijuana that spring. She was unsuccessfully discharged from a treatment program in June 2018.

By August 2018, Amanda's visits with her daughters had improved. The girls both attended and enjoyed the interactions.

In September 2018, the State filed petitions to terminate Amanda's parental rights as to An.R. and Au.R.[2] At that point, the girls had been adjudicated as CINA for almost forty-one months. The juvenile court heard the matter on November 8, 2018. Debra George, who served as the children's attorney and guardian ad litem (GAL), presented the testimony of both daughters in the judge's chambers.

An.R., then fifteen years old, and Au.R., then fourteen years old, said they understood the legal concept of termination of parental rights[3] and objected to the termination of their mother's rights. Au.R. explained why she objected to termination of Amanda's rights: "because she's trying to, like, be there for us, and she's not just excluding us from her life. She's, like, working around things to see us." When asked to expand on that point, Au.R. told the court: "[S]he drives to see us every week, and she cancels her appointments to come see us. She's going to treatment so she can try and move up there." But Au.R. also recognized she could not go home with her mother at the time of the hearing. And Au.R. testified she would "feel okay" if adopted by her foster parents.

Ms. George offered into evidence a letter An.R. wrote to the judge objecting to termination of her mother's parental rights. In the letter, An.R. recognized "my mom hasn't really been a 'mom' these last few years." But she expressed optimism their visits were getting better, writing, "I can see me being w[ith] her one day (same

---

[2] The petitions also sought to terminate the parental rights of the girls' fathers. The juvenile court granted those requests. The fathers are not parties to this appeal.

[3] Au.R. aptly described termination as "[a] legal document saying that my mom and dad are not technically my parents anymore."

home).” An.R. wrote, “I love her to pieces and she will always be my mom.” An.R. testified she would be “sad” and “angry” if her mother's parental rights were terminated. But An.R. also testified she liked living with her foster parents and considered them to be family. An.R. discussed medical issues she recently faced and her appreciation for the care provided by her foster mother, who was a nurse.

On November 20, 2018, the juvenile court issued its order terminating Amanda's parental rights under Iowa Code section 232.116(1)(f). She appeals, raising a single issue: did the juvenile court improperly terminate the mother's parental rights when the children did not agree to termination?

## II.  Analysis

Terminations follow a three-step analysis. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). First, the juvenile court must decide if the State proved one of the enumerated grounds in section 232.116(1). *Id.* Second, the court must consider if termination is in the best interests of the children by applying the factors in section 232.116(2). *Id.* Third, if the factors require termination, the court must see if any circumstances in section 232.116(3) compel it to forego termination. *Id.* at 41. “The factors weighing against termination in section 232.116(3) are permissive, not mandatory.” *In re D.S.*, 806 N.W.2d 458, 474–75 (Iowa Ct. App. 2011). The court may exercise its discretion in deciding whether to apply the factors in section 232.116(3) to save the parent-child relationship based on the unique circumstances of each case and the best interests of the children. *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014).

Amanda does not challenge the first or second steps. She focuses solely on the permissive factor in section 232.116(3)(b). That provision allows a juvenile

court to refrain from terminating the relationship between a parent and child if the child "is over ten years of age and objects to the termination." Iowa Code § 232.116(3)(b).

The juvenile court performed a careful analysis of this factor in its order terminating Amanda's parental rights:

> The children are each more than ten years of age, and both have expressed an opinion that they do not wish to have their mother's parental rights terminated. While both [Au.R.] and [An.R.] expressed a desire not to have Amanda's rights terminated they both expressed a desire to remain in their current foster home, and indicated they would not object to their foster parents adopting them should parental rights be terminated.

The juvenile court emphasized: "The girls love their mother—this is not in question; however, they each recognize their mother is simply not capable of providing them with the sort of safe, nurturing and permanent home they both need and deserve." The court concluded:

> [W]hile the girls expressed a desire to not have their mother's parental rights terminated the balance of the evidence establishes that this preference does not outweigh the other evidence which shows by a clear and convincing standard that termination of Amanda's parental rights would be in the best interest of the girls.

In her petition on appeal, Amanda disagrees with the juvenile court's conclusion. She notes, although the girls did not currently live with her, she was "more stable at the time of the termination hearing than she had been during other periods of the case." Amanda emphasizes "she cares for her children and maintains close contact with them."

In response to the petition on appeal, Ms. George filed a Janus-like argument—looking opposite directions in her dual roles as the children's attorney

and their GAL.[4]  As the children's attorney, she urges us to "give greater weight" to the children's view of their relationship with their mother.  As GAL, Ms. George stresses "whether they understand it or not, permanency is important for these girls."  Ms. George also observes, "[L]ittle precedent describes what unique circumstances" would cause a court to refrain from terminating a parent's rights where the State proved a statutory ground and termination is in the children's best interests.  *See* Iowa Code § 232.116(1)–(2).

We agree with her observation.  Our case law has not devoted extensive analysis to the child-objection factor in section 232.116(3)(b).  For a helpful analogy, we look to custody disputes in divorce cases.  There, our courts have opined, "Preferences of minor children while not controlling are relevant and cannot be ignored."  *In re Marriage of Ellerbroek*, 377 N.W.2d 257, 258 (Iowa Ct. App. 1985) (citing *In re Marriage of Burham*, 283 N.W.2d 269, 276 (Iowa 1979)).  The best interests of a child is not always what "the child wants."  *Id.* (quoting *Lursen v. Hendrichs*, 33 N.W.2d 383, 386 (Iowa 1948)).  Rather, courts consider a host of factors when weighing children's custody preferences, including (1) their age and education level; (2) the strength of their preference; (3) their intellectual and emotional make-up; (4) their relationship with family members; (5) the reason for their decision; (6) the advisability of honoring the children's desire; and (7) the court's recognition it is not aware of all the factors influencing the children's view.

---

[4] The same person may serve as both the children's attorney and their GAL unless a conflict arises between the two roles.  Iowa Code § 232.89(4); *see In re A.T.,* 744 N.W.2d 657, 665 (Iowa Ct. App. 2007) (describing conflict as GAL recommending disposition counter to the child's wishes).

*Id.* at 258–59. We believe it is useful to borrow this framework for the challenge under section 232.116(3)(b).

In this case, the children are in their mid-teens, attending regular classes in their late middle school to early high school years. The girls described themselves as having "average" intelligence. An.R. struggles somewhat with her mental health and attends therapy. But overall, the girls had the capacity to offer a meaningful viewpoint. On the strength of their objection, the girls did not equivocate in their opposition to termination of their mother's parental rights. But their objection coincided with the recent improvement in Amanda's mental health. A few months earlier, the girls declined visitation with the mother due to her unsettling behavior.

As the juvenile court found, "Amanda's mental health and substance abuse issues have created a situation where she is currently unable to provide appropriate care for her children." By the time of the termination order, the DHS had been involved with the family for almost four years. Given this constellation of circumstances, we find honoring the girls' wishes would undermine their need for stability and permanency.

While we credit these teenagers for clearly expressing their objection to the termination, we do not believe this permissive factor required the juvenile court to bypass termination in this situation. *See In re J.S.*, No. 16-0112, 2016 WL 899857, at *3 (Iowa Ct. App. Mar. 9, 2016) ("The children's yearning for reunification does not tilt the balance away from termination."); *see also In re A.S.*, No. 16-1984, 2017 WL 710562, at *3 (Iowa Ct. App. Feb. 22, 2017) (affirming termination over children's objection because "[o]ur overriding concern must be the long-term best interests of the children"). Like the juvenile court, we conclude termination of

Amanda's parental rights was proper despite the objection of the children at the termination hearing.

**AFFIRMED.**