# IN THE COURT OF APPEALS OF IOWA

No. 21-0396
Filed August 18, 2021

**IN THE INTEREST OF D.T., J.B., and M.L.,**
**Minor Children,**

**C.B., Mother,**
    Appellant,

**A.T., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Dallas County, Virginia Cobb, District Associate Judge.

A mother, two of her three children, and the father of the youngest child appeal a termination of parental rights decision. **AFFIRMED ON ALL APPEALS.**

Nicholas Einwalter, Des Moines, for appellant mother.

Stephen K. Allison of Stephen Allison Law, PLLC, Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Donna M. Schauer of Shauer Law Office, Adel, attorney for minor children J.B. and M.L.

Kayla Stratton of Juvenile Public Defender, Des Moines, guardian ad litem for minor children.

Considered by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**VAITHESWARAN, Judge.**

A mother, two of her three children, and the father of the youngest child appeal a termination of parental rights decision.

## I. *Mother's Appeal*

The mother has three children, born in 2005, 2011, and 2019.  She lived with the father of the youngest child.  The department of human services became involved with the family after learning the mother and the youngest child's father were in an "unsuitable trailer" that "was in need of repair."  According to a department report, "The home had rooms with no ceiling and insulation hanging down, electrical wires exposed, holes in the floors to the point the children [could] fall through as well as several electrical issues."

The State filed a child-in-need-of-assistance petition.  The children were removed from the mother's custody and were later adjudicated in need of assistance

In time, the mother and youngest child's father moved into a home that was "clean and appropriate" for the children.  Shortly before the termination hearing, they moved again without informing the department of their new address.

In addition to the home conditions, both parents reported domestic violence by the other.  The mother underwent therapy, primarily to address that concern. She discontinued her participation two months before the termination hearing.

The mother was present at the termination hearing but did not testify.  The district court terminated her parental rights to all three children.

On appeal, the mother contends (A) the State failed to prove the grounds for termination cited by the district court and (B) the district court should have

granted exceptions to termination based on the ages of the older two children and the closeness of the parent-child bond.

**A.** We may affirm if we find clear and convincing evidence to support any of the grounds cited by the district court. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). We will focus on Iowa Code subsections 232.116(1)(f) and (h) (2020), which require proof of several elements including proof the children cannot be returned to parental custody.

The mother contends, "[W]hat began as a concern over housing cascaded into more and more issues brought up by the department." In her view, the department's "continual[] moving [of] the goalposts" made the parents "mad."

There is no question the department discerned concerns beyond the parents' housing situation. Those concerns were not manufactured or misplaced.

The department reported that there was "a court order stating the parents [were] not to reside in the same home." The parents "continue[d] to reside in an apartment together." The oldest child expressed fear for her mother's safety in this father's presence.

The department also reported that the mother was not "addressing [her] mental health needs." A psychosocial evaluation supported the department's determination. The evaluator noted that the mother discontinued therapy. She described the mother as "very angry" and lacking in insight.

The mother displayed her anger during visits. Her exchanges with the youngest child's father became so "aggressive" that the department curtailed semi-supervised public interactions and reinstated supervised visits. At the time of the termination hearing, the visits remained fully supervised.

The department recommended termination of parental rights, reasoning:

> All three of these children have been removed from their parents for . . . 19 months with no[] opportunity for overnights or extended visits. [The parents] have not been able to demonstrate stability for the children to be returned to their care. Both parents continue to demonstrate mental health concerns and neither parent[] is addressing their mental health needs. The children deserve permanency.

We agree with the department's assessment. On our de novo review, we conclude the State proved the children could not be returned to the mother's custody.

*B.* The district court "need not terminate the relationship between the parent and child if the court finds . . . [t]he child is over ten years of age and objects to the termination" or "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(b), (c). The mother asserts the two older children "did not want to have their rights terminated" and the youngest child was "bonded to" her.

A child's preference is a factor for consideration, but a host of other factors may affect the determination. *See In re A.R.*, 932 N.W.2d 588, 592 (Iowa Ct. App. 2019). The older two children were fifteen and nine.

The younger child was not old enough to invoke the age-related exception to termination. Nonetheless, their attorney recommended against terminating the mother's parental rights to him because he "never wavered from that request." Even if the child could invoke the exception, we conclude his strong attachment to his mother did not override concerns for his safety in her care.

As for the older child, the attorney stated the child changed "her position depending on how things [were] going with her mother" and the father of the

youngest child but, in a recent conversation, the child "request[ed] that the Court not terminate the parental rights of her mother." The teen's conflicted views about termination were understandable. She acted as a surrogate parent to the younger children and as a friend and confidante of the mother. For example, the service provider who supervised visits testified the teen "[o]ccasionally [took] a lot of the reins with" the youngest child and instructed the middle child as a parent would. The mother, in turn, talked with the teen about her relationship with the father of the youngest child, which adversely affected the teen's emotional well-being. Even the teen's attorney acknowledged that the child understood she was "often the parent" and "she would like to just be able to be a child." This was reason enough to decline the teen's request for a permissive exception to termination. *See id.* ("While we credit these teenagers for clearly expressing their objection to the termination, we do not believe this permissive factor required the juvenile court to bypass termination in this situation.").

We turn to the bond between the mother and children. The oldest two shared a close bond with her. The middle child, in particular, always wanted to stay close to her during supervised visits. The youngest child was just over a year old. There was scant, if any, evidence of the child's relationship with the mother. Even if he shared a close bond with her, his physical and mental well-being and the well-being of the older children were paramount. The mother was not in a position to safely parent the children at the time of the termination hearing. Accordingly, there was no reason to invoke the "closeness of the parent-child relationship" exception to termination.

## II.    Children's Appeal

The attorney for the older two children of the mother raises the same two exceptions to termination raised by the mother—their ages and preferences and the bond they shared with the mother.  *See* Iowa Code § 232.116(3)(b), (c).  For the reasons stated above, we are unpersuaded.

## III.    Father's Appeal

The father of the youngest child failed to file a notice of appeal in the case involving that child.  The supreme court flagged the omission and stated: "Assuming the father promptly files a notice of appeal in the correct district court case, the father shall address in his petition on appeal whether the court has jurisdiction to consider his untimely notice of appeal."  The father immediately filed a notice of appeal.

On appeal, the father contends we should grant a delayed appeal because he lacked the proper security to see the case history in the case involving the youngest child.  He asserts "to not grant a delayed appeal would cause [him] to suffer undue prejudice."

"[T]he termination of parental rights, including the appeal process, clearly implicates protected liberty interests for parents to which due process protections attach."  *In re A.B.*, 957 N.W.2d 280, 291 (Iowa 2021).  "Given the clear liberty interests implicated in termination proceedings, [there is] no reasoned basis for refusing to allow a delayed appeal."  *Id.* at 292.  "[T]he delayed appeal standard should be strictly circumscribed."  *Id.*  A delayed appeal will be allowed "only where the parent clearly intended to appeal and the failure to timely perfect the appeal was outside of the parent's control."  *Id.*

We believe that was the case here. The termination order listed three case numbers. One was just a number apart from another case involving the father. The father timely filed a notice of appeal after the supreme court flagged the issue. He cited a problem in gaining access to the case history as grounds for failing to file a notice earlier. The circumstances warrant the grant of a delayed appeal.

The father argues the State failed to prove the two grounds for termination cited by the district court. We elect to examine Iowa Code section 232.116(1)(h). As noted, the provision requires proof the child cannot be returned to parental custody.

The department case manager testified the father "self-reported" mental-health diagnoses for which he received treatment in the past. She noted that the father "was discharged unsuccessfully November 12th[, 2019] due to lack of participation and attendance." She personally witnessed lack of impulse control or anger, including "name calling." He admitted to throwing a paint can at the child's mother, and he admitted violence towards other women. The case manager recommended termination of his parental rights to the child. On our de novo review, we agree the child could not be returned to the father's custody at the time of the termination hearing. We affirm the termination of his parental rights to the child.

**AFFIRMED ON ALL APPEALS.**