# IN THE COURT OF APPEALS OF IOWA

No. 23-0996
Filed September 18, 2024

**IN THE INTEREST OF T.K.,**
**Minor Child,**

**T.K., Father,**
    Petitioner-Appellee,

**A.R., Mother,**
    Respondent-Appellant.
_____

Appeal from the Iowa District Court for Lee (South) County, Jonathan Stensvaag, Judge.

A mother appeals the private termination of her parental rights under Iowa Code chapter 600A. **AFFIRMED.**

Steven J. Swan (until withdrawal) of Law Office of Steven J. Swan, Keokuk, for appellant mother.

A.R., self-represented appellant.

Scott E. Schroeder of Clark & Schroeder, PLLC, Burlington, for appellee father.

Considered by Badding, P.J., and Langholz and Sandy, JJ.

**LANGHOLZ, Judge.**

After a two-year-old girl tested positive for methamphetamine, she was removed from her mother and placed in her father's custody by the juvenile court. A year later, the mother disappeared from her daughter's life and cut off all communication. And for the next seven years, the daughter never saw or heard from her mother. During the mother's absence, the daughter gained a stepmother and two stepbrothers, started calling her stepmother "mom," and grew into a bright, social, and athletically gifted child. But the daughter's comfortable status quo changed in 2022, when she encountered her mother for the first time since she was a toddler and the mother began asking for visitation. Now, the daughter reports much anxiety and stress about the mother reentering her life and the trauma the daughter experienced in her early years living with the mother.

The father petitioned to terminate the mother's parental rights under Iowa Code section 600A.8 (2022), alleging abandonment as the ground for termination. The mother did not dispute her prolonged absence, but argued she spent those years addressing her substance use and is now able to pursue a relationship with her daughter. The juvenile court terminated the mother's rights, finding the mother abandoned the daughter and that termination is in the daughter's best interest. The mother appeals, challenging only the best-interest finding.

While we commend the mother's progress toward sobriety, our polestar is what is best for the daughter, not what is best for the parent. Giving the juvenile court's factual findings their due weight, we find the mother has not assumed the duties of a parent and termination best serves the daughter's long-term needs. We thus affirm the juvenile court.

I.

The mother and father share one daughter, who is now thirteen. The parents were never married, and their daughter at first lived with the mother. But in late 2013, the daughter was removed from her mother's care as a result of a child-welfare investigation—the mother was using methamphetamine and the two-year-old daughter tested positive for the substance. So the juvenile court placed the daughter with her father and she has remained in his care since 2013.

After assuming physical care of his daughter, the father petitioned to establish paternity, legal custody, physical care, visitation, and child support. *See* Iowa Code §§ 600B.40, 600B.40A. The mother was served but never appeared, so in December 2014 the district court entered a default judgment and issued a custody order in her absence. That order granted the parents joint legal custody, placed the daughter in the father's physical care, and set a supervised visitation schedule for the mother. It also required the mother to pay fifty dollars per month in child support.

Around this time, the mother broke off all communication—no texts, no birthday cards, no visits, no child support. That silence continued for over seven years. Thus, from when the daughter was three years old until a few months after her eleventh birthday, the mother was absent from the daughter's life.

Meanwhile, the father began dating a woman and married her in 2018. The daughter has called the stepmother "mom" since she was four years old. The stepmother has two sons from a prior relationship, so the daughter gained two stepbrothers. And the daughter is doing well in their household—she gets high grades in school, wants to be a surgeon, and plays for a traveling softball team.

Despite the mother's extended absence, the father has kept the daughter in contact with the mother's extended family, including the daughter's cousins, aunts, uncles, and grandparents. He has also helped the daughter maintain a relationship with her older half-sister—another child of the mother with a different father—who had lived together with the daughter in the mother's home during their early years. And the father plans to continue supporting these family relationships.

In April 2022, the mother's grandfather passed away. The daughter, then eleven years old, attended the funeral, where she saw her mother for the first time since she was a toddler. At first, the daughter did not recognize the mother. After the mother introduced herself, they sat together at the funeral—with the father supervising from a few rows behind—and spent thirty or forty minutes together at the funeral home.

About a month later, the mother contacted the father and asked if she could speak to her daughter on the phone. According to the mother, her seven-year absence was due to her substance use and a long road to recovery. The mother wanted to prove she was sober before reentering her daughter's life. And the mother had indeed made significant progress—she completed inpatient treatment in 2019 and then spent over two years in a supportive housing program. But she never provided any proof of her treatment, counseling, or sobriety to the father. And so the father never responded to the mother's request.

The mother tried again in July, offering to set up a supervised visit with the daughter. But she still did not provide any proof of treatment or sobriety. The father refused, responding that the mother is still on the child-abuse registry and she should not contact him again. By this point, the daughter did not want to see

the mother or pursue any relationship. Indeed, her mother's reappearance caused her significant emotional distress. She struggles with many traumatic memories from her early childhood and reported being scared to be alone with the mother.[1]

The father also grew concerned that if something were to happen to him, the daughter could end up in her mother's care rather than with her stepmother. So he petitioned to terminate the mother's parental rights under chapter 600A, with the goal of the stepmother adopting the daughter. The petition alleged the mother abandoned the daughter under Iowa Code section 600A.8 and terminating the mother's parental rights best served the daughter.

The daughter's guardian ad litem recommended termination. The daughter, then twelve years old, reported to the guardian ad litem that she wanted her stepmother to adopt her, did not view the mother as part of her family, and had no positive memories of her. The guardian ad litem believed termination would provide permanency and finality to the daughter, and that upending the daughter's life would cause her considerable damage.

After a one-day hearing, the juvenile court terminated the mother's parental rights. The court found the mother "has not maintained substantial and continuous or repeated contact" with her daughter despite many chances to do so. Indeed, the mother lived very close to the daughter for several years after completing

---

[1] The mother also sent two letters, through counsel, asking to see the daughter. She later moved to hold the father in contempt for violating the visitation provisions of the 2014 custody order and petitioned to modify the order to award her increased visiting rights, progressing "to unsupervised visitation with overnight, weekend, holiday, Mother's Day, birthday and extended visitation periods." After entry of the order terminating the mother's parental rights, the district court postponed the hearing on the mother's requests pending the outcome of this appeal.

inpatient treatment, but never tried to see or call her. So even after she achieved sobriety, the mother made no effort to renew a relationship with the daughter. Nor did the mother financially support the daughter—skirting child-support payments for over seven years and only starting payments in October 2022 after her wages were garnished. The court thus concluded the mother abandoned her daughter under Iowa Code section 600A.8(3)(b) and failed to pay court-ordered child support under 600A.8(4). And the court found that terminating the mother's parental rights best served the daughter. It reasoned that the daughter is thriving in her father and stepmother's care and terminating the relationship would provide the daughter with security in her future. The mother now appeals.

## II.

We begin by clarifying the scope of the mother's appeal. Private terminations under Iowa Code chapter 600A are a two-step process. *In re B.H.A.*, 938 N.W.2d 227, 232 (Iowa 2020). First, clear and convincing evidence must show a ground for termination exists. Iowa Code § 600A.8. Second, the petitioner must prove that termination is in the child's best interest. *Id.* § 600A.1. On appeal, the mother's brief only discusses whether termination was in the daughter's best interest—she never argues that the father failed to prove abandonment under section 600A.8(3)(b) or nonpayment of child support under section 600A.8(4).

Despite this omission, the father dedicates much of his brief to the merits of these grounds. But those issues are not before us—the mother's choice not to brief an issue waives it on appeal. *See* Iowa R. App. P. 6.903(2)(a)(8)(3). So we proceed directly to the mother's sole challenge to the juvenile court's order— whether the court properly concluded that termination was in the daughter's best

interest. We review this issue de novo, giving due weight to the juvenile court's factfinding and credibility determinations. *B.H.A.*, 938 N.W.2d at 232.

In private termination actions, considering the daughter's best interest requires us to decide "whether a parent has affirmatively assumed the duties of a parent." Iowa Code § 600A.1(2). To that end, we must weigh the mother's "fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication with the child, and demonstration of the establishment and maintenance of a place of importance in the child's life." *Id.* Our review also entails "borrow[ing] from the statutory best-interest framework outlined in Iowa Code chapter 232." *B.H.A.*, 938 N.W.2d at 232. And so, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

Despite the child-focused nature of our inquiry, the mother's brief is mostly concerned with herself and the father—the ways in which she has improved her life and the ways in which the father purportedly impeded her relationship with her daughter. As to the former, our polestar is what is best for the daughter, not what is perhaps most fair to the parent. *Cf. In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). So while we commend the mother's progress toward sobriety, the mother's newfound desire or ability to be a parent does not outweigh the daughter's right to stability and permanency in her family.

And as to the latter, the mother's seven-year absence while using methamphetamine and engaging in recovery was caused solely by the mother—

not the father. Indeed, the mother testified that she did not financially support, show any interest in, or ever try to communicate with, the daughter. And those choices were hers alone. So we agree with the juvenile court that the mother has not assumed the duties encompassed by her role as a parent.

What's more, when the mother does discuss the daughter's wants and needs, it is only to cast doubt on the court's fact-finding. The mother insists that any bad memories from her daughter's childhood are imagined or planted by others. And despite the daughter not recognizing her at the funeral and expressing no desire for a relationship, the mother asks that we find that they share a bond and that the daughter does not favor termination. Yet these are precisely the kind of fact determinations best resolved by the juvenile court after its "front-row seat to the live testimony." *Hora v. Hora*, 5 N.W.3d 635, 645 (Iowa 2024).

Across our review, we see no basis to depart from the juvenile court's findings that the daughter indeed suffers from traumatic memories from her early childhood in her mother's care, does not feel close to or desire a relationship with the mother, and would ultimately be best served by termination. *Cf. In re A.R.*, 932 N.W.2d 588, 591 (Iowa Ct. App. 2019) (borrowing a framework from dissolution for considering a child's preferences in termination proceedings, explaining "[p]references of minor children while not controlling are relevant and cannot be ignored" (cleaned up)). Indeed, the daughter is flourishing in her father and stepmother's care—succeeding academically, socially, and athletically. Terminating the mother's parental rights thus furthers the daughter's long-term needs, provides her with safety and stability, and is in her best interest.

**AFFIRMED.**