**IN THE COURT OF APPEALS OF IOWA**

No. 24-2065
Filed March 19, 2025

**IN THE INTEREST OF K.W. and N.W.,**
**Minor Children,**

**S.W., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Brent Pattison, Judge.


A mother appeals the termination of her parental rights to her children.
**AFFIRMED.**


Tonya A. Oetken of Oetken Law Firm, Inc., Ankeny, for appellant mother.

Brenna Bird, Attorney General, and Lisa Jeanes, Assistant Attorney General, for appellee State.

Erin Elizabeth Romar of Youth Law Center, Des Moines, attorney and guardian ad litem for minor children.


Considered by Tabor, C.J., and Schumacher and Chicchelly, JJ.

**TABOR, Chief Judge.**

The juvenile court expressed "no doubt" the mother loves these children but also had "no doubt" she could not meet their needs. In terminating her parental rights, the court found: "The bottom line is that she is still learning how to meet her own needs—and struggling mightily in that regard."

S.W. appeals, contending the court should have preserved her legal relationship with her two daughters, nine-year-old K.W. and eight-year-old N.W. She argues that the State failed to prove by clear and convincing evidence the statutory grounds for termination, termination is not in her daughters' best interests, and the court should forgo termination because the girls are in their father's custody and because of the strong parent-child bond. Examining the record anew,[1] we agree with the juvenile court's observations and affirm the termination order.

I.    **Facts and Prior Proceedings**

When it discovered the mother was using methamphetamine in the spring of 2022, the Iowa Department of Health and Human Services implemented a safety plan for the family, placing the children with their maternal grandmother. But when the mother assaulted the grandmother in the presence of the children, the department ended the safety plan and removed the children.[2] They were placed

---

[1] "We review termination proceedings de novo, examining both the facts and law and adjudicating anew those issues properly preserved and presented." *In re A.R.*, 932 N.W.2d 588, 589 n.1 (Iowa Ct. App. 2019). The juvenile court's factual findings do not bind us, but we give them weight, especially on witness credibility. *Id.*

[2] Before the removal, the children lived with their half-sibling Z.B. The proceedings regarding Z.B. were separate and not relevant here.

in the custody of their father, B.W.  The court adjudicated them as children in need of assistance (CINA) in May 2023.

During the CINA case, the mother did little to address the department's safety concerns and to resume custody of the children.  Despite court orders, S.W. did not complete any substance-use treatment.  She completed only one drug screen for the department while the safety plan was in place, which was negative.  But she did not participate in any further testing—failing to appear for random screens and tampering with sweat patches.

Unfortunately, the children's placement with their father was disrupted too.  About eight months into their stay with him, the court ordered an emergency removal because B.W. was abusing alcohol.[3]  But then B.W. committed himself to substance-use treatment.  And in May 2024 the court ordered custody returned to the father under the protective supervision of the department.  The children have remained in his custody since then and, by all accounts, are doing well.

Meanwhile, S.W. did not participate in services needed to ensure a safe reunion with the children.  Thus, after the March 2024 permanency review hearing, the court ordered the State to petition to terminate her parental rights.  S.W. had not sought substance-use treatment.  And while she testified at the termination hearing that she had participated in mental-health services, she did not release information for the department.  She was also inconsistent with supervised visitation, which upset her daughters.  The caseworker testified that S.W. stopped attending visits in July 2024 and pretty much stopped communicating with the

---

[3] The children were placed with their aunt during that time.

department by August. The caseworker did not know where the mother was living, though S.W. testified that she was living with a friend. For much of the CINA case, the mother was living in her car.

Despite failing to participate in professionally supervised visits, the mother continued to show up at B.W.'s house unannounced. B.W. testified that he would allow the mother contact with the children, even after termination, as long as she is safe and the children are not "in harm's way." But he was concerned S.W. would not comply if the court entered a bridge order setting custody rather than terminating her parental rights.

The court held the termination hearing over two days in October and November 2024. S.W. did not appear in person on the first day but joined by video conferencing. Her counsel explained she could not appear in person because she had just entered a local substance-use treatment facility and did not want to risk losing her bed by going to the court hearing.[4] Because the hearing went long, the court scheduled a second day to allow S.W. to testify. But on the second day, S.W. did not appear, and the parties agreed to close the record. Her counsel explained that because of an illness, S.W. was discharged from the treatment facility without completing treatment. Only then did S.W. appear. The court agreed to reopen the record for her testimony, during which she admitted using methamphetamine just four weeks earlier.

The court terminated S.W.'s rights under Iowa Code section 232.116(1)(f) (2024). S.W. appeals.

---

[4] The juvenile court was skeptical of this claim and denied a motion to continue the hearing.

## II.    Discussion

"Terminations follow a three-step analysis." *A.R.*, 932 N.W.2d at 591. First, we determine whether the State met the statutory grounds; then we consider if termination is in the children's best interests; and, finally, we decide whether circumstances warrant application of a statutory exception. *See id.* S.W. raises an argument at each step of the analysis.[5]

First, S.W. argues that the State failed to prove the element for termination at subparagraph (f)(4) of section 232.116(1). In her petition on appeal, she asserts the State did not offer clear and convincing evidence the children cannot be returned to her custody at the present time. *See* Iowa Code § 232.116(1)(f)(4); *In re M.H.,* 12 N.W.3d 159, 161 (Iowa Ct. App. 2024) (interpreting "at the present time" to mean at the time of the termination trial). We disagree. The record showed that the department did not know where the mother was living, so it could not determine whether she could provide the children with a safe home. What's more, she had not engaged in substance-use or mental-health treatment as ordered. She also avoided drug testing. Thus, we agree with the juvenile court that the State showed the children could not be safely returned to her custody at the time of the termination hearing.

Next, the mother argues that it was not in the children's best interests to terminate her rights. In assessing this second step, we give primary consideration to the children's safety; to the best placement for furthering their long-term

---

[5] The State disputes the adequacy of the mother's argument and citations to record on each issue. We find that the mother raised each issue on appeal to a minimally adequate standard and address the merits.

nurturing and growth; and to their physical, mental, and emotional conditions and needs. Iowa Code § 232.116(2). The mother showed no growth in addressing her substance-use or mental-health concerns. And her visits were sporadic. Given this lack of progress, the record shows the children would not be safe with the mother in either the short- or long-term. It is in their best interests to terminate her rights.

Beyond best interests, S.W. argues that severing her relationship with her daughters would harm them and suggests the court should bypass termination under a statutory exception. *See id.* § 232.116(3) (providing the court may bypass termination on clear and convincing evidence it "would be detrimental . . . due to the closeness of the parent-child relationship"). It is the parent's burden to establish that an exception applies. *In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018).

The juvenile court did perceive a bond between the mother and her daughters. But it found that "it has been damaged by her inconsistent participation in their lives." We agree. "[O]ur consideration must center on whether the child[ren] will be disadvantaged by termination, and whether the disadvantage overcomes [the parent's] inability to provide for [their] developing needs." *In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010). No doubt, the mother loves her children and wants to have a relationship with them. But she has not made the strides necessary to resume their custody and has presented no evidence that the termination of her rights will harm them.

Finally, the mother suggests that termination is not the "least restrictive alternative" and contends that the court should have entered a bridge order because the children are in their father's custody. *See* Iowa Code § 232.116(3)(a)

(permitting the court to bypass termination if the children are in a relative's legal custody).  The juvenile court carefully considered this option and determined that bypassing termination is not in the children's best interests.  We agree with that determination.

B.W. testified that he was concerned S.W. would not follow a custody order, especially if conflicts arose over their parenting.  His concern is supported by the record, which reveals S.W.'s resistance to following court orders.  Given that history, the termination of S.W.'s rights will serve the children's need for safety and stability in their father's custody.  B.W. testified that he still considered S.W. their mother and would allow interactions so long as S.W. did not pose a risk.  Like the juvenile court, we believe that the best interests of the children are served by terminating S.W.'s rights and allowing B.W. to set those appropriate boundaries.

**AFFIRMED.**