**IN THE COURT OF APPEALS OF IOWA**

No. 25-0265
Filed May 7, 2025

**IN THE INTEREST OF B.T. and J.T.,**
**Minor Children,**

**S.T., Mother,**
　　　Appellant,

**J.T., Minor Child,**
　　　Appellant.
_____

　　　Appeal from the Iowa District Court for Polk County, Lynn Poschner, Judge.


　　　A mother appeals the termination of her parental rights to two sons, and the older son also appeals termination of the mother's rights to him. **AFFIRMED ON BOTH APPEALS.**


　　　Michael A. Horn of Horn Law Offices, Des Moines, for appellant mother.

　　　Megil D. Patterson of Youth Law Center, Des Moines, for appellant minor child.

　　　Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

　　　Ling Harl, Ankeny, attorney and guardian ad litem for minor children.


　　　Considered without oral argument by Tabor, C.J., and Ahlers and Langholz, JJ.

**LANGHOLZ, Judge.**

Two sons were removed from their mother's custody after she possessed methamphetamine and was charged with child endangerment for driving her car while her then-seven-year-old son was first standing on its hood and then clinging to the side of the car. After removal, the mother made little progress toward reunification. And during the termination trial, the mother assailed the child-welfare proceedings—denying any substance-use issues despite previously admitting to using methamphetamine daily, defending her refusal to submit drug screens, and refuting her struggles to appropriately parent the boys both before and during this case. So the juvenile court terminated her parental rights to both sons, over the objection of her older son. Both the mother and older son now appeal.

We have carefully considered all arguments raised in these appeals, especially the older son's desire to stay with his mother. The son's objection is grounded in his wish to care for the mother and be with her to ensure she is supported going forward. But at twelve years old, he deserves to be a kid. And one of our core responsibilities is to ensure children are cared *for*—not doing the caretaking. So, like the juvenile court, we find the child-objection exception should not prevent termination here.

As for the other issues, the mother's lack of progress with her substance use precludes returning the sons to her custody, the sons are best served by termination, no permissive exception should apply, and the juvenile court appropriately declined to impose a guardianship or give extra time to work toward reunification. We therefore affirm both appeals.

## I.      Factual Background and Proceedings

The mother has two sons—an older son born in 2012 and a younger son born in 2016.[1]  In September 2023, the mother arrived to pick up her younger son from school.  He was upset and jumped on the hood of her car.  In response, the mother began driving the car forward with her son still on the hood.  And, after briefly stopping, she continued to drive onto a residential street as the son jumped off and clung to the driver-side mirror and door handle.  The event was captured on video and the mother was later arrested and charged with child endangerment.  During the arrest, officers searched the mother and found about three grams of methamphetamine.  And a short time later, the sons' father was tragically killed in an ATV accident.

After learning of the mother's drug possession, the car incident, and the father's death, the Iowa Department of Health and Human Services ("HHS") believed the sons were not safe in their mother's custody.  So the sons were removed and later adjudicated in need of assistance.

After removal and adjudication, the mother did not meaningfully work toward reunification.  Although she at first disclosed that she used methamphetamine daily, she later tried to walk-back that admission and afterward refused to acknowledge she had any problem with illicit substances.  She consistently refused to submit drug screens.  Nor did she meaningfully engage with substance-use treatment, only participating in late 2024 after the termination petition was filed.

---

[1] We avoid using the parties' names to respect their privacy because this opinion—unlike the juvenile court's order—is public.  *Compare* Iowa Code § 232.147(2) (2025), *with id.* §§ 602.4301(2), 602.5110.

The mother also made concerning parenting decisions. She discussed age-inappropriate topics with the younger son during phone calls. She has also insisted the father was not really dead when speaking with the sons, distressing the younger son who was present during the accident. And she acknowledged telling the younger son she would "beat [his] ass" after he misbehaved.

Meanwhile, the sons were placed apart, and both endured several short-term stays at different foster placements until long-term placements were established.[2] The older son was placed with his current foster family in February 2024, and the younger son was placed with his adult half-brother in August 2024. The younger son has behavioral needs and has made great strides in his half-brother's care. Significantly, he reached a milestone at his school for consecutive days of meeting his behavior goals. His half-brother maintains daily contact with his school and worked to establish consistent medical and mental-health treatment, including a medication regimen. And the older son has also developed well with his foster family, though he at times reported that he wished he was back with his mother, as there were "no rules" in her home.

After over a year with no progress toward reunification, the State petitioned to terminate the mother's parental rights to both sons. The case proceeded to a hearing in January 2025, where the mother provided troubling testimony. She denied any wrongdoing during the car event that led to removal and disagreed the younger son was ever in danger. Indeed, she believed there was never a basis for removal. And the mother currently lives with her new fiancé but downplayed

---

[2] All agree the sons' separate placements are in their best interests. *See generally* Iowa Code § 232.108(1).

the degree of conflict in the relationship. For instance, she described a time when law enforcement was called because her fiancé was "beating on [her] door" and deflated her car's tires to keep her from leaving. Yet in her view, all relationships involve fighting and her fiancé never did anything "that could really hurt" her.

The mother also discussed her pending criminal matters. Before the termination hearing, the mother's deferred judgment on her child-endangerment charge was revoked for probation violations. As a result, she was convicted and sentenced to a year in jail. At the time of the hearing, she was released on an appeal bond and it was unclear when she would ultimately be incarcerated or for how long. She also had a new fourth-degree theft charge pending.

As for her substance use, the mother denied any ongoing use. She claimed the methamphetamine found during her arrest was not hers, that she has never tested positive for illicit substances, and that she has no need for treatment. The mother also acknowledged having unresolved mental-health needs and having a tendency to "snap" during conversations. But she offered inconsistent testimony about whether she wanted or needed mental-health treatment going forward. And she repeated her belief that the father may not be dead, even when questioned about the confusion or harm those statements may cause the sons.

At the close of evidence, the mother and older son resisted termination. The older son's attorney requested another six months to work toward reunification. Notably, the guardian ad litem believed the son's objection stemmed from his desire to help the mother and his concern that she could not "make it on her own." The mother requested the immediate return of the sons, six more months to work toward reunification, or a guardianship in lieu of termination.

The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(f) (2024). Relevant here, the court found the sons could not be safely returned to their mother's care, as she "has no insight into her substance use history or needs." The court reasoned that if the sons were "returned to [the mother's] custody they would be subjected to continued neglect and their basic needs and mental health needs would not be met. The situation would be essentially the same as when the children were removed from her custody." The court also found termination was in the sons' best interests. It noted that the mother "doesn't understand" that her "interactions with the children have been harmful," and the mother "has not shown that she can put her obligation to take care of her children before her own needs." And the court found both sons are safe and well-cared-for outside of their mother's care. As for the older son's objection, the juvenile court explained he "should not be burdened with being responsible for his mother's well-being and mental health." Finally, the court declined the mother's request for extra time to work toward reunification and did not find a guardianship was appropriate. The mother and older son appeal.

## II.     The Mother's Appeal.

We follow a three-step process when terminating parental rights. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). First, the State must prove a statutory ground for termination. *Id.* Second, the State must show that termination is in the best interest of the child. *Id.* And third, the mother bears the burden to show whether a permissive exception applies that should preclude termination. *Id.* We review a termination decision de novo, giving "respectful consideration" to the juvenile

court's factual findings, especially when based on credibility determinations. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

*Termination under Iowa Code section 232.116(1)(f).* The mother first challenges whether the State proved termination was warranted, focusing on the fourth element of paragraph "f"—whether the sons could be returned to her custody at the time of the termination hearing. *See* Iowa Code § 223.116(1)(f)(4). She argues that she has stable housing, has begun engaging with substance-use treatment, and the sons are both older and thus "have some ability to self-protect." But like the juvenile court, we agree the State proved the sons could not be safely returned to the mother's custody.

The mother has made minimal progress with her substance use. Though she points to her recent turn toward treatment, "[a] parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting." *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000). The problem with rebuffing services until the eleventh hour is "the underlying problems which adversely affected" the mother's "ability to effectively parent" become "too serious to be overcome in the short period of time prior to the termination hearing." *Id.* What's more, the mother's trial testimony shows that these recent efforts were only taken to appease HHS. Given her steadfast refusal to admit any ongoing use or problem, she would almost certainly withdraw from treatment if the sons were returned and this matter were closed.

The mother also never progressed beyond fully supervised visits with the sons. *See In re L.H.*, 13 N.W.3d 627, 629 (Iowa Ct. App. 2024). And her trial testimony displayed little insight into providing a safe home or adequate parenting

of the sons—downplaying the conflict between herself and her fiancé and being unable to identify topics that are inappropriate to discuss with children. Thus, we agree the State proved by clear and convincing evidence that the sons could not be returned to the mother's custody.

*Best Interests.* The mother next disputes that termination is in her sons' best interests, again pointing to her recent treatment and adequate housing. But the mother overlooks that our best-interests analysis does not turn on her own desires, but what is best for the sons both now and in the future. *See* Iowa Code § 232.116(2). Considering those short- and long-term needs, both sons are safe, cared for, and maturing well in their placements—particularly the younger son, who has made tremendous progress in the care of his half-brother. Returning them to their mother's custody would disrupt their progress and expose them to the same harms that led to their initial removal. So placing their wellbeing at the forefront, we agree with the juvenile court that they are best served by termination.

*Permissive exceptions.* The mother also argues that the court should have declined to terminate under two permissive exceptions: her older son's objection and the bond she shares with her sons. *See id.* § 232.116(3)(b), (c).

First considering the child-objection exception, a court has discretion to forgo termination if a child over the age of ten objects to the termination. *Id.* § 232.116(3)(b). When weighing the son's objection, we may consider factors including his age, the strength of his preference, his "intellectual and emotional make-up," his connection with other family members, why he chose to object, "the advisability of honoring [his] desire," and the possibility that we may not be "aware of all the factors influencing the [son's] view." *In re A.R.*, 932 N.W.2d 588, 592

(Iowa Ct. App. 2019). And we must also be mindful that a child's "yearning for reunification" does not necessarily "tilt the balance away from termination," as our "overriding concern must" always be what is best for the son. *Id.* (cleaned up).

We recognize the older son's desire to support and care for his mother. But at twelve years old, he deserves to be a kid. "A child's long-term nurturing and growth is not furthered when the child becomes responsible for nurturing the parent." *In re J.D.*, No. 11-1122, 2011 WL 4578486, at *3 (Iowa Ct. App. Oct. 5, 2011). Indeed, prioritizing the "crucial days of childhood" means ensuring that children are the ones being cared *for*. *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). So for the same reasons we find it unsafe to return the son to his mother's custody, we agree the court appropriately declined to apply this exception.

The bond exception similarly does not apply here. *See* Iowa Code § 232.116(3)(c) (allowing courts to decline termination if it "would be detrimental to the child at the time due to the closeness of the parent-child relationship"). On appeal, the mother devotes minimal attention to this issue, stating only that she shares a close relationship with both children. But the mere existence of a bond is not enough to overcome termination. *In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021). Without more, the mother has not met her burden for this exception.

*Alternatives to Termination*. Finally, the mother argues that the juvenile court should have given her six more months to work toward reunification or imposed a guardianship in lieu of termination. *See* Iowa Code § 232.117(5). The juvenile court declined both alternatives, and we agree.

First considering extra time, a juvenile court may give a parent six additional months to work toward reunification if it believes "the need for removal of the child

from the child's home will no longer exist" after that period. *Id.* § 232.104(2)(b). But the mother has not shown that the basis for removal would not exist within six months of the termination hearing. Instead, the mother testified during trial that she believes the sons were never in danger, never should have been removed, and that she has always been capable of safely caring for them. Because she sees no areas for improvement, we in turn see no basis to find that the mother would make the necessary improvements within six months.

As for a guardianship, a court may choose to place a child in a guardianship rather than terminate parental rights if it finds, among things, that "termination of the parent-child relationship would not be in the best interest of the child." *See id.* § 232.104(4)(a). As discussed above, termination is in the sons' best interests. They have endured significant instability and deserve permanency now. Thus, we agree with the juvenile court that no alternatives to termination were appropriate.

### III. The Older Son's Appeal.

The older son also appeals the termination of the mother's parental rights to him, filing a petition that largely tracks his mother's arguments. To avoid retreading ground, we affirm the juvenile court's termination of her parental rights to him for all the reasons stated above. And we do so with one final point. By affirming termination, we in no way wish to diminish the older son's desire to remain in his mother's life. We respect him for participating in the proceeding, voicing his preferences, and wanting to ensure his mother is supported. Yet our task is to place his childhood and development first.

**AFFIRMED ON BOTH APPEALS.**