**IN THE COURT OF APPEALS OF IOWA**

No. 25-0572
Filed June 18, 2025

**IN THE INTEREST OF Z.C.,**
**Minor Child**

**P.Q., Mother,**
 Appellant.
_____

 Appeal from the Iowa District Court for Marshall County, Paul G. Crawford,

Judge.


 A mother challenges the termination of her parental rights to her seven-

year-old son. **AFFIRMED.**


 Melissa A. Nine of Nine Law Office, Marshalltown, for appellant mother.

 Brenna Bird, Attorney General, and Michelle R. Becker, Assistant Attorney

General, for appellee State.

 Mary Cowdrey of Public Defender's Office, Marshalltown, attorney and

guardian ad litem for minor child.


 Considered without oral argument by Tabor, C.J., and Ahlers and

Langholz, JJ.

**TABOR, Chief Judge.**

A mother appeals the juvenile court order severing her legal relationship with Z.C., her seven-year-old son.[1] She contends the State failed to offer clear and convincing evidence that Z.C. could not be safely returned to her custody. *See* Iowa Code § 232.116(1)(f)(4) (2025). She also argues that the court erred in denying her "Motion for Active and Reasonable Efforts" in which she sought an order directing the State to complete the process of determining whether Z.C. qualified as an Indian child under the Iowa Indian Child Welfare Act (ICWA). *See id.* §§ 232B.3(8), .5(19).

On the first issue, we find sufficient proof that returning Z.C. to his mother's custody would expose him to adjudicatory harm.[2] On the second issue, the record does not show that ICWA applies to Z.C.'s case. Thus, we affirm.

### I.      Facts and Prior Proceedings

This family came to the attention of the Iowa Department of Health and Human Services in March 2023 when the mother was arrested on an outstanding warrant after a traffic stop. In the car, the arresting officer found drug paraphernalia, which tested positive for methamphetamine. Z.C. was also in the car. Later that month, the mother—who was caring for Z.C.—tested positive for methamphetamine when she met with her probation officer. In April, Z.C. was removed from the mother's custody and placed with his father.

---

[1] The court also terminated the parental rights of Z.C.'s father; he does not appeal.
[2] Adjudicatory harm means that Z.C. would again qualify as a child in need of assistance if returned to his parents. *See In re T.W.*, No. 20-0145, 2020 WL 1881115, at *2–3 (Iowa Ct. App. Apr. 15, 2020); *see also In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992).

In May 2023, the juvenile court adjudicated Z.C. as a child in need of assistance (CINA) under Iowa Code section 232.96A(16)(a) (parent "unlawfully uses, possesses, manufactures, cultivates, or distributes a dangerous substance in the presence of the child"). The department entered a safety plan with the father that prevented unsupervised visits between Z.C. and the mother. But the parents did not follow that plan. During an unannounced visit in June, the social worker found the mother hiding under a comforter at the home with the father and Z.C. Because the parents did not maintain boundaries, the department moved Z.C. to foster care that summer.

Meanwhile, the mother was uncooperative with drug testing. And in August, she again tested positive for methamphetamine. Another positive test followed in November. At a review hearing in December, the mother claimed that she had received a document from Omega Laboratories admitting an error in its drug testing result. The department doubted the document's authenticity. The court made this finding:

> November/December 2023—the "Omega letter". The Court is empowered to make credibility determinations in any type of case. Here, the Court finds credible [the social worker's] concerns about the letter not being authentic. What is more disturbing to this Court is mother's testimony in October 2024 when shown the "Omega letter." All she said was she was unsure if she had ever seen that letter before. A delicate balancing act by mother to avoid implicating herself in involvement with what was very likely a deceptive document.

Prospects for reunification did not progress in 2024. In January, the mother tested positive for methamphetamine from a sweat patch collected in December 2023. Also in January, Z.C.'s guardian ad litem (GAL) moved to temporarily stop visits because they were "basically chaos. The parents did not model any caring,

adult behaviors." After a hearing, the court declined to suspend visits but warned that it had the authority to do so if the interactions did not improve. The court also directed the mother to obtain a new mental-health evaluation and to cooperate with drug testing and treatment recommendations.

In February 2024, the GAL again stepped up, this time to urge that Z.C. receive medications prescribed by his doctor for difficulty sleeping. The parents disagreed with the doctor's recommendations and refused to authorize the medications. So the court ordered that the child was allowed to take the recommended over-the-counter medication at the foster parent's discretion.

Also in February, the mother informed the department that she had "ancestry with the Umatilla Tribe of Oregon." The caseworker contacted the tribe to see if the child was an enrolled member or eligible for enrollment. The tribe responded in March that Z.C. was not an enrolled member.

The mother was in jail during April and May. She also failed to complete a three-session parenting assessment required by the department. Her recalcitrance prevented the department from formulating meaningful recommendations for reunification. Neither did she engage in required drug testing, having six "no shows" recorded that spring and eight more missed tests between July and September 2024. Her attendance was also hit and miss for scheduled visits with Z.C. Six times during the summer of 2024, the mother told service providers that she could not attend visits as scheduled because she was drug testing. But they later discovered that drug testing was not offered in her community on those dates. As for Z.C., he was reluctant to attend visits with his mother, according to the service provider.

In July 2024, the State petitioned for termination of parental rights. The court held a combined permanency review and termination hearing in October. At that hearing, the department social worker testified that she was concerned about the mother's "unmet" substance-use and mental-health issues. The worker believed that the mother's inaccurate self-reporting to the Substance Abuse Treatment Unit of Central Iowa (SATUCI) resulted in unreliable treatment recommendations. The mother testified that she has been "complying with visits as much as [she] possibly can" but perceived that the department "acts in a manner that is directly to target me and to punish me for whatever they feel is going on."

Z.C.'s maternal grandmother also testified remotely from Oregon. She said that her mother, Z.C.'s great grandmother, was Native American but was adopted outside the Walla Walla tribe.[3] The family was pursuing enrollment but did not know when the paperwork would be complete. One month after the termination hearing, the mother filed a "Motion for Active and Reasonable Efforts" seeking a determination whether ICWA applied to her case. The court denied the mother's motion in January 2025.

The court then granted the State's petition to terminate parental rights, reasoning:

> [The] [m]other's acts of deception during these cases make it too hard for this Court to trust her word that [Z.C.] can be safely returned to her at this time. Her decisions to be defiant and uncooperative with the court's orders and [the department's] directives deprive the court of scientific support for her word that she is no longer using methamphetamine. Unresolved drug use is enough to find that a child cannot be returned to parental custody under Iowa Code section 232.116(1)(f).

---

[3] The court found that the Walla Walla tribe was a part of the confederated tribes of the Umatilla Indian Reservation.

She appeals.[4]

## II.      Analysis

## A.  Ground for Termination

The mother contends that the State failed to prove the statutory ground for termination under Iowa Code section 232.116(1)(f).  She asserts the State did not offer clear and convincing evidence for subparagraph (4)—that Z.C. could not be returned to her custody at the present time without risk of harm.  *See* Iowa Code § 232.116(1)(f)(4).  We interpret "at the present time" to mean "at the time of the termination hearing."  *In re R.M.-V.*, 13 N.W.3d 620, 626 (Iowa Ct. App. 2024).

The mother objects to the juvenile court describing her as "deceitful and defiant."  But even if those labels fit, she argues that description does not support terminating her parental rights.  She also argues that the "assessments provided by [SATUCI,] an agency that specialized in drug abuse," were more credible than the department's view that she was "a dangerous drug user."

But the department social workers testified they were skeptical about the mother's successful discharge from SATUCI because "she continued to tell them that she wasn't using when she was testing positive."  In our de novo review, we find their skepticism warranted.  And when we consider the mother's lack of

---

[4] We review her claims de novo, "examining both the facts and law and adjudicating anew those issues properly preserved and presented."  *In re A.R.*, 932 N.W.2d 588, 589 n.1 (Iowa Ct. App. 2019).  The juvenile court's factual findings do not bind us, but we give them weight, especially when deciding witness credibility.  *Id.*

candor, together with her many missed drug tests,[5] we find ample evidence that her unresolved methamphetamine use posed a risk to Z.C. if returned to her custody.  *See In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) ("We have long recognized that an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children.").

### B. Active Efforts under ICWA

The mother next challenges the court's denial of her motion for active and reasonable efforts.[6]  These two standards describe the level of services that the department must provide a family involved with the juvenile court system.  *See In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022).  Under the non-ICWA framework, the department must make reasonable efforts; but under ICWA, the department must make active efforts at reunification.  *Compare* Iowa Code § 232B.5(19) *with id.* § 232.102A.  But the mother's petition on appeal includes no argument about reasonable efforts.  And she offers only this sentence on the ICWA standard: "Evidence of active efforts was not provided at the hearing."

The mother then contends that the court mischaracterized her motion as an attempt to "derail" the termination proceedings.  And she objects to what she calls "flippant attempts" by the department to place the burden on her to demonstrate that Z.C. may be eligible for tribal enrollment.

---

[5] We have allowed the presumption that missed drug tests would have been positive.  *See In re C.F.,* No. 20-1067, 2020 WL 6482073, at *1 (Iowa Ct. App. Nov. 4, 2020) (collecting cases).

[6] As its opening response, the State argues that the mother filed her motion in the CINA case and thus it is outside the record of the termination matter, submitted in October 2024.  We disagree.  The court held a combined permanency and termination hearing.  The court then denied the mother's motion before it ruled on either question.  The mother may challenge that denial in this appeal.

The State counters that the department should not be held to an active-efforts standard because ICWA did not apply in these proceedings. Citing *In re R.E.K.F.*, the State asserts the ICWA protections are not available until the court determines that Z.C. is an Indian child, as defined by Iowa Code section 232B.3(8).[7] *See* 698 N.W.2d 147, 151 (Iowa 2005).

The State is correct. In denying the mother's motion for active efforts, the juvenile court noted correspondence between the department and the tribe showing that Z.C. was not an enrolled member—nor were his mother or grandmother. The grandmother testified at the termination hearing that her tribal enrollment was not yet finalized. So the mother's arguments fail because the record shows that Z.C. did not fit the definition of "Indian child" at the time of the hearing. *See Z.K.*, 973 N.W.2d at 35.

Finding no merit to the mother's claims, we affirm the termination order.

**AFFIRMED.**

---

[7] An Indian child is one "that an Indian tribe identifies as a child of the tribe's community." Iowa Code § 232B.3(8).